Argued November 20, affirmed December 3, 1970, petition for
rehearing denied January 5, petition for review
denied February 17, 1971

IN THE MATTER OF THE ADOPTION OF MATTHEW
GORDON AND MARK GORDON, MINORS.

McCLESKEY ET UX, *Appellants, v.* OREGON
STATE PUBLIC WELFARE COMMISSION,
*Respondent.*
477 P2d 235

*Keith E. Tichenor*, Legal Aid Service, Portland, argued the cause and filed the briefs for appellants.

*James W. Durham*, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Alan H. Johansen, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Langtry and Branchfield, Judges.

LANGTRY, J.

Petitioners, as foster parents, had placed with them by the Oregon State Public Welfare Commission (hereinafter referred to as the Welfare Division) twin boys who were born August 27, 1967. Subsequently, the Welfare Division received from their mother a valid release of the children which included a release for adoption. A permanent commitment to the Welfare Division through the juvenile court terminated the father's rights. Petitioners in this proceeding seek adoption of the boys without consent of the Welfare Division, which, after the petition was filed, moved to dismiss it. The motion was

granted and petitioners appeal, asserting that under the applicable statutes consent is unnecessary, or if the relevant statutes are construed to require consent, the statutes invalidly delegate judicial powers to the Welfare Division.

ORS 418.270, 418.275 and 418.285, read together, confer upon the Welfare Division, in the circumstances related above, *inter alia,* authority, "Where the agency deems such action proper and desirable [to] * * * consent *in loco parentis* to the legal adoption of such children."

ORS 109.316 provides that the Welfare Division acting *in loco parentis* "may consent" to an adoption like that in question here, and that "no other consent is required." It also provides that where consent is given by the Welfare Division, "there shall be filed" copies of pertinent parental surrenders and court permanent commitment orders. Copies of such documents were annexed to the motion to dismiss.

■ Other sections of ORS ch 109 require consent for adoptions in other circumstances, respectively, from parents, the person to be adopted if over 14 years old, guardians, next of kin, next friend appointed by the court, out-of-state adoption agencies, and parents in situations where children have been awarded in divorce cases. The pattern of the statutes is that consents for adoption from someone or some agency, presumably placing the interests of the child foremost, are necessary before the court may proceed to a decree of adoption, except in cases of mental incompetence or desertion. In these circumstances the parents are cited to show cause why adoption should not proceed without a consent. ORS 109.322-109.324. We conclude that the clear implication of the adoption statutes is

that the consent of the Welfare Division is required in the case at bar.

The Oregon Supreme Court, construing the adoption statutes, has consistently indicated that allegation and proof of consent is jurisdictional, and this is so where the child has been permanently committed to an agency. *In Re Flora's Adoption*, 152 Or 155, 52 P2d 178 (1935); *In Re Clara Marie Koger*, 206 Or 307, 311, 292 P2d 791 (1956); *Hughes v. Aetna Casualty Co.*, 234 Or 426, 383 P2d 55 (1963).

■ Petitioners cite ORS 109.310, which states, "Any person may petition * * * for leave to adopt another * * *," and assert that this literally means anyone is entitled to try to adopt another, except where there is an express statutory prohibition. We think ORS 109.310 must be interpreted *in pari materia* with the other adoption statutes. When it is, although persons who have an interest in the child may petition for its adoption, if the child has been permanently committed to an agency, they must allege and prove a consent from that agency if the court is to have jurisdiction to decree an adoption to them. *In Re Clara Marie Koger*, supra.

■ Petitioners argue that the decisions in *Flora's Adoption* and *Hughes*, supra, apply a rule of strict construction, and that ORS 109.305, which became law in 1957, requiring a rule of liberal construction in adoption cases, changes this rule. Petitioners confuse rules of construction with requirements of jurisdiction. The statutes, with exceptions already noted, as we have concluded above, require designated consents before a court may proceed to decree adoptions. If such consents are not given, liberal rules of construction may not be substituted for them.

■ Petitioners contend that the "jurisdiction, author-

ity, powers, functions and duties" conferred on circuit courts by ORS 3.260(2) in, *inter alia*, adoptions, are violated by a construction of the statutes which delegates such jurisdiction to the Welfare Division. None of the adoption statutes confer on the Welfare Division jurisdiction to decide adoption cases. That agency, like a parent and in the place of parents, with the knowledge it has of the child and the child's circumstances, gives or withholds consent, as a parent would do, each presumably with the best interests of the child as an objective. The court, having acquired jurisdiction under a petition alleging requisite jurisdictional facts, proceeds to a hearing and determination. The adoption may or may not be granted, dependent on the court's assessment of the evidence, not that of the agency or the parents.

Petitioners contend that our statutes contemplate that when a child not committed to an agency is to be adopted, there must be a consent of parent, guardian, or other statutorily designated person, but that if the child is committed to an agency it is a "putting [of] the child up for adoption, generally." The decision in *Koger*, supra, supports the filing of a petition by foster parents of a child, but, as we have already noted, it specifically states that if the child has already been permanently committed to an agency, the foster parents must obtain a consent from the agency to be successful in the adoption proceeding. Under petitioners' contention untold numbers of strangers, without restriction, could petition for adoption of children committed to agencies, and the courts would have to entertain and hear each petition. This is an absurd result which the statutes do not support.

Affirmed.