Argued August 31, reversed and remanded
March 5, reconsideration denied April 16, petition for
review denied June 6,1979, 186 Or 521

GRAHAM, et ux, *Respondents,*
*v.*
CHILDREN'S SERVICES DIVISION, et al,
*Appellants.*
(Nos. 99435 and 99436, CA 9922)

591 P2d 375

Al J. Laue, former Solicitor General, Salem, argued the cause for appellants. With him on appellants' brief were James A. Redden, Attorney General, and Paul R. Romain, Deputy Attorney General, Salem. On the reply brief were James A. Redden, Attorney General, Walter L. Barrie, present Solicitor General, and Paul R. Romain, Deputy Attorney General, Salem.

Levi J. Smith, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton and Roberts, Judges.

THORNTON, J.

## THORNTON, J.

The Children's Services Division (CSD) appeals from a decision of the trial court that respondents Cecil and Eva Graham are entitled to a contested case hearing before CSD can refuse to consent to respondents' adoption of Mrs. Graham's grandchildren. The consent of CSD is required because CSD was awarded permanent custody of the children[1] when the parental rights of the children's father, Mrs. Graham's son, were terminated under ORS 419.523 and 419.525. The trial court found that respondents have a constitutionally recognized liberty interest in their grandchildren requiring the protection afforded by such a hearing. *See*, ORS 183.310(2)(a).[2]

---

[1]

"(1) The Children's Services Division * * * , acting in loco parentis, may consent to the adoption of a child who has been:
" * * * * *
"(b) Permanently committed to it by order of a court of competent jurisdiction * * * .
" * * * * * ." ORS 109.316(1)(b).

*See* ORS 109.390(3). Such consent is jurisdictional in adoption proceedings. *Greybull v. Children's Services Div.*, 29 Or App 889, 565 P2d 773 (1977); *State ex rel Juv. Dept. v. Kenneth M.*, 27 Or App 185, 555 P2d 933, *rev den* (1976); *McCleskey v. Welfare Comm.*, 4 Or App 308, 477 P2d 235, *rev den* (1971).

In this case the natural father and only remaining parent of the children gave his consent to his parents' adoption of the children, after termination proceedings were instituted but before their conclusion. Generally, when the natural parents give their consent to adoption of their children, the adoption proceedings should precede termination proceedings. *In Re Clara Marie Koger*, 206 Or 307, 292 P2d 791 (1956); *In re Adoption of Smith*, 38 Ill App 3d 217, 347 NE2d 292 (1976), *cert den* 431 US 939 (1977). However, where, as here, the adoption is intended primarily to circumvent the termination, the focus should first be on the welfare of the children, rather than the qualifications of the prospective adoptive parents. Hence, the termination proceedings should be concluded before the petition for adoption is considered. *State ex rel Juv. Dept. v. Kenneth M., supra* at 190-91.

[2] ORS 183.310(2) provides in pertinent part:

" 'Contested' case means a proceeding before an agency:
"(a) In which the individual legal rights, duties or privileges of specific parties are required by * * * Constitution to be determined only

Hence, the issue before us is whether grandparents of children in whom parental rights of the grandparents' child have terminated, and who at one time had custody of those children, have a constitutionally protected interest in such grandchildren which requires the procedural protection of an adversary hearing before an agency empowered to withhold its required consent to adoption of the grandchildren by the parents.[3]

The father of the children was convicted of the murder of their mother. The act was committed in the presence of one of them. The children were placed in temporary foster care for five months, and then legal custody of them was awarded to the Grahams. Fourteen months later a trial court terminated the father's parental rights and awarded permanent custody of them to CSD, which was to find a suitable adoptive home for the children. It also denied the Grahams' petition for adoption. Five months later we affirmed the termination and denial of the petition for adoption. *State ex rel Juv. Dept. v. Kenneth M.,* 27 Or App 185, 555 P2d 933, *rev den* (1976). The respondents applied again to CSD for adoption of the children, but CSD withheld its consent. The respondents then petitioned for review in the circuit court, alleging that they were entitled to a contested case hearing before CSD could withhold its consent. The circuit court agreed. We disagree, and reverse.

after an agency hearing at which such specific parties are entitled to appear and be heard * * *

" * * * * * *."

The mode of procedure in and judicial review of contested cases is delineated in ORS 183.415 through 183.482.

[3] The role grandparents may play in adoption and termination proceedings has not been completely determined. We have held that grandparents have no standing to contest the adoption of their grandchildren. *Mahoney v. Linder,* 14 Or App 656, 514 P2d 901 (1973). Grandparents also have no standing, in general, to appeal from orders terminating the rights of parents of their grandchildren. *State ex rel Juv. Dept. v. Hayes,* 16 Or App 438, 519 P2d 104 (1974). In *Hayes* we declined to decide whether it was possible for grandparents to intervene in termination proceedings, 16 Or App at 442, n 3, and thus gain standing to appeal.

The court below found that the Grahams have a protected liberty interest, arising either out of their status as grandparents of the children or from their association with the grandchildren as legal custodians for 14 months, of which the state may not deprive them without due process of law.

In finding that the Grahams had a protected interest as grandparents, the trial court relied heavily on *Moore v. City of East Cleveland,* 431 US 494, 97 S Ct 1932, 52 L Ed 2d 531 (1977). In *Moore* the court struck down an ordinance which prohibited heads of households from sharing their homes with the offspring of more than one of their children. A plurality opinion held that there was a substantive due process right of members of an extended family to live together, arising from American tradition, which could not lightly be denied by a local government.[4]

CSD argues that here the family has already been destroyed by the termination of the children's father's parental rights, and thus *Moore* does not apply. Respondents claim that the instant case concerns a greater infringement on the family than did Moore, since it involves not minor criminal sanctions but the deprivation of respondents' continued contact with their grandchildren.

*Moore* is inapposite here. It concerned the right of a family to live together and not the right to adopt. It does not create in grandparents a liberty or property interest in their grandchildren as prospective adoptive children.

The Utah Supreme Court has held that where there are no parents to assert their vested legal claims to their children, the inchoate right of the next of kin ripens. Hence, when a mother surrendered her rights

---

[4] *Moore v. City of East Cleveland,* 431 US 494, 97 S Ct 1932, 52 L Ed 2d 531 (1977), was the first case in which the Supreme Court found a protected liberty interest in an extended family. Earlier decisions had involved various aspects of establishing and maintaining a nuclear family. See cases cited in *Moore,* 431 US at 499.

[31]

to her child when faced with a termination proceeding, the court required the agency with whom the child had been placed to allow the grandmother of the child a hearing before denying her petition for custody or adoption of the child. *Wilson v. Family Services Div., Region Two*, 554 P2d 227 (Utah 1976).

We do not agree with the rationale of *Wilson* that a grandparent, by virtue of his status as a grandparent, has a right of adoption superior to that of a nonrelative. *See, Mahoney v. Linder*, 14 Or App 656, 514 P2d 901 (1973); *State ex rel Juv. Dept. v. Hayes*, 16 Or App 438, 519 P2d 104 (1974). Additionally, the decision in *Wilson* rested, at least in part, on a finding that the agency could act arbitrarily and unreviewably. Such is not the case in Oregon, where our Administrative Procedures Act provides for review of noncontested cases. ORS 183.484. Also, the juvenile court may retain jurisdiction over the children involved, even though it cannot modify any orders while an adoption proceeding is pending. *Children's Services Division v. Weaver*, 19 Or App 574, 528 P2d 556 (1974); ORS 419.527(1)(a). Furthermore, we cannot agree that an inchoate right to grandchildren always arises in the absence of parents.

The court below also found a liberty interest arising from the Grahams' custody of the children for the 14 months immediately preceding the termination of Mrs. Graham's son's parental rights. Several recent cases from various jurisdictions have explored the possibility that foster parents and prospective adoptive parents have rights entitled to due process protection.

In *C. V.C. v. Superior Court*, 29 Cal App 3d 909, 106 Cal Rptr 123 (1973), a California Court of Appeals found that prospective adoptive parents had an interest in the child entitled to protection, and thus "[i]n the absence of imminent danger to the child, the grievous loss threatening the prospective parents outweighs the state's interest in summary termination" of their

custody of the children. 29 Cal App 3d at 917. A federal district court has ruled that an informal foster mother, who had taken care of a child for most of its two and one-half years of life, was entitled to the same due process protection as a natural or legal parent when the state sought to establish that the child was neglected. *James v. McLinden*, 341 F Supp 1233 (D Conn 1969).

The Supreme Court has assumed, without deciding, that foster parents have some liberty interest, and held that the state statutes in question provided them with any procedural protections to which they were entitled when the state sought removal of children from foster homes. *Smith v. Organization of Foster Families*, 431 US 816, 97 S Ct 2094, 53 L Ed 2d 14 (1977). However, it noted that such an interest was, of necessity, quite limited, as it was based upon state statutes and contracts. 431 US at 846.

The Fifth Circuit refused to find protected liberty interests for a foster family which sought to adopt the child placed with it. *Drummond v. Fulton Cty. Dept. of Family, etc.*, 563 F2d 1200 (5th Cir 1977), *cert den* 437 US 910 (1978).[5] It found that the state in question considered foster homes to be temporary, and that the development of a relationship giving rise to a liberty claim would be inimical to the goals set for foster homes as transitions between two permanent homes. 563 F2d at 1206-07. It also held that an attempt to remove a child was not defamatory to the foster family, and thus did not infringe on a liberty interest in the family's reputation. 563 F2d at 1207-08.

Although these cases would be quite relevant were the question before us the existence of, and scope of protection to be afforded to, any liberty interest the

---

[5] The state court took a similar approach, but also found a lack of property interest in the foster parents. *See Drummond v. Family &c. Services*, 237 Ga 449, 228 SE2d 839 (1976), *cert den* 432 US 905 (1977). *Accord: W.C v P.M.*, 155 NJ Super 555, 383 A2d 125 (1978).

Grahams had in continued custody of their grandchildren, that is not the issue we must address. Rather, it is claimed that the Grahams have a liberty interest arising out of their prior custody of their grandchildren. That custody was ended by court order at the same time Mrs. Graham's son's parental rights were terminated. We find no support for the thesis that custody long extinguished by court order after a judicial inquiry into the sort of custody which would best serve the interests of the children gives rise to any continued liberty interest, assuming that such an interest theretofore existed.

In summary, we conclude that grandparents have no liberty interest herein and no rights superior to a nonrelative applying for permission to adopt. Hence, we find no liberty interest of the respondents requiring the protection of a contested case hearing.

When respondents sought review of CSD's denial of consent in the circuit court, as required by ORS 183.484(1),[6] they apparently sought not only a determination of whether they were entitled to a contested case hearing, but also, if the court found they were not so entitled, review of the matter as a noncontested case, pursuant to ORS 183.484(3). Since their petition was adequate for review, they are now entitled to review in the circuit court. ORS 183.484(3).[7]

---

[6] *See, e.g., Fadeley v. Oregon Ethics Comm.*, 25 Or App 867, 551 P2d 496 (1976); *N.W. Envir. v Air Poll. Auth.*, 16 Or App 638, 519 P2d 1271, *rev den* (1974).

[7] Consent of Children's Services Division is jurisdictional in adoption proceedings involving children permanently committed to the agency. *See* note 1 and accompanying text, *supra*. There is considerable dictum to the effect that CSD's refusal to consent cannot be challenged. The cases discussing the unreviewability of CSD's refusal to consent all involve adoption proceedings. *Greybull v. Children's Services Div.*, 29 Or App 889, 565 P2d 773 (1977); *Children's Services Div. v. Zach*, 18 Or App 288, 525 P2d 185 (1974); *McCleskey v. Welfare Comm.*, 4 Or App 308, 477 P2d 235, *rev den* (1971). None deals, as does this case, with a direct challenge to CSD's refusal to consent to an adoption. Furthermore, those cases rest, at least in part, upon the fact that CSD is in loco parentis as to the children

**Reversed and remanded.**

---

permanently committed to it. *See McCleskey v. Welfare Comm., supra* at 312. CSD is not a biological parent. The fact that CSD must make the same sort of decision a parent may make does not give it the broad, unreviewable discretion of a human parent.