Argued and submitted March 28, affirmed May 27, 1980

BROWNING,
*Respondent,*
*v.*
GRAHAM, et ux,
*Appellants.*

(No A7711-16651, CA 15218)

611 P2d 348

Elizabeth L. Perris, Portland, argued the cause for appellants. With her on the briefs was McMenamin, Joseph, Herrell & Babener, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Richardson, Presiding Judge, Thornton and Buttler, Judges, and Howell, Judge Pro Tem.

THORNTON, J.

## THORNTON, J.

This is an appeal from an order of the circuit court granting an involuntary nonsuit on defendants' counterclaims which alleged negligent and intentional infliction of mental distress. Plaintiff's complaint which sought to collect $100 owed by defendants was dismissed. We affirm.

The essential facts are as follows:

Defendants are the paternal grandparents of two children whose mother was murdered under circumstances set forth in *State ex rel Juv. Dept. v. Kenneth M.,* 27 Or App 185, 555 P2d 933, *rev den* (1976). They have made persistent efforts to adopt their grandchildren. *See Graham v. Children's Services Division,* 39 Or App 27, 591 P2d 375 (1979). In *Kenneth M.,* this court affirmed the denial of defendants' petition for adoption but ordered CSD to undertake a thorough study of all alternatives for custody of the children, including adoption by the Grahams.

Plaintiff, a psychiatrist, was originally retained by the children's attorney, following the 1976 adoption proceeding, to make a psychological evaluation of the children. The results of this evaluation were submitted in two separate reports, neither of which discussed adoption alternatives. In some manner that is not clear from the evidence, these reports came to the attention of defendants' attorney, who obtained copies from the children's attorney. He was impressed by their objectivity and, aware that CSD respected plaintiff's opinion, he requested plaintiff to interview defendants and submit a report to CSD, with respect to their fitness as adoptive parents. She consented and defendants' attorney contacted CSD and requested that the final decision be postponed until the report could be submitted. CSD agreed to wait.

Unknown to defendants' attorney, the children's attorney, on short notice, had requested plaintiff to make a recommendation with respect to psychiatric

[313]

treatment for the children for the purposes of obtaining funding. This recommendation was sent to CSD in the form of a letter which stated that, from facts she had learned from the children's attorney's brief to this court in *Kenneth M.,* which were consistent with her observations of the children, she concluded that it would be best that defendants not be allowed to adopt and that their bi-weekly visits with the children produced anxiety in the children and should be terminated. Defendants' attorney had heard rumors that this negative recommendation existed at the time he requested plaintiff's "reports" from the children's attorney. For some reason, again not clear, this letter was not sent to defendants' attorney with the other reports. He did not specifically inquire further into the rumored negative report.

When defendants were interviewed by plaintiff on December 29, 1976, no mention was made by anyone of the letter. The only discussion of prior reports, according to Mrs. Graham, was plaintiff's response to her inquiry about the evaluation of the children, that the reports "looked good" and the children would be all right in time.[1]

Plaintiff testified that she was aware she had sent the adverse recommendation but had no reason to believe that the defendants' attorney was unaware of it when she agreed to interview defendants. She further acknowledged that this recommendation was

---

[1] From direct examination of Eva Louise Graham, aka Louise Graham:

"Q [by defense attorney] Did you ask her anything about prior reports that she had written in the matter?

"A Yes, I asked her about the evaluation she had done on the kids.

"Q What did you say?

"A I asked her—being she had seen them—if they looked good.

"Q And do you recall what she said?

"A Not specifically, but it was—says, yes, you know, they were good, and she thought the kids were okay. It would just take time; that they would be okay."

based on secondhand information and felt she could be objective about defendants. During the interview she asked defendants about some of the items she had seen in the children's attorney's brief referred to above. Defendant denied these facts for the most part. Plaintiff obtained the transcript from the adoption proceeding and verified the adverse items she had read in the brief. Mrs. Graham denied the statements again at trial in this case and was impeached by portions of the transcript from the prior proceeding.

Plaintiff thereafter submitted to CSD her report which recommended that defendants not be allowed to adopt the children. The bases stated for her opinion are basically as follows: (a) defendants' approach to the murder of the children's mother was to avoid discussing it and it was clear that the older child in particular had not resolved his feelings about it; (b) defendants' continued ties to their son whose parental rights were terminated created conflicts of loyalty; (c) Mrs. Graham's negative views of the children's mother could not help but be communicated to the children; and (d) defendants' past statements and conduct suggested that they did not really see the need for therapy for the children, despite their present assurances that they would support any therapy programs. There were other secondary considerations stated which relate to defendants' age, their rather isolated living situation, and their failure to encourage any of their own children to finish high school. The report concludes that the Grahams' advantages—strong emotional ties and ability to offer a familiar environment—are outweighed by the problems attendant in allowing them to adopt and recommends permanent placement with a disinterested family.

When CSD was contacted by defendants' attorney and asked to wait for plaintiff's report, the adoption committee had already made a tentative recommendation that the Grahams not be allowed to adopt. Following receipt of the report, a final decision was

made to that effect. Several members of the committee testified, including the person responsible for the final decision. They testified uniformly that the general feeling among everyone (the committee's decision was unanimous) was that a neutral family was most desirable. They considered numerous reports including prior evaluations of the Grahams and plaintiff's report and letter to CSD as well as transcripts and other evidence. One witness testified that plaintiff's report contained nothing new in the way of information or conclusions and that it merely tended to corroborate the opinions of the committee members.

At trial, by stipulation, defendants put on evidence first with respect to their counterclaims. At the close of defendants' evidence, plaintiff moved for involuntary nonsuits on both counterclaims which were granted. Thereafter, plaintiff declined to put on evidence of the amount owed for her services and the case was dismissed.

The first count pleaded negligent infliction of mental distress (malpractice), alleging three particulars: (a) failure to disclose to the Grahams prior to the interview the existence of the adverse letter; (b) submission of a report which inaccurately described the Grahams' family background and which was based on plaintiff's bias and prejudice; and (c) in failing to take reasonable steps to verify that certain of the adverse factors enumerated in the report were true. The first of these was stricken from the complaint before trial and that ruling is assigned as error.[2] Nonsuit was

---

[2] We need not reach this assignment of error in light of our ultimate disposition of this appeal. The letter and surrounding circumstances were admitted into evidence under the second allegation of negligence—that plaintiff reached conclusions based on bias and prejudice. The complaint alleges:

"VI.

"As a direct and approximate [sic] result of the actions and conduct of Dr. Browning, which result Dr. Browning knew would follow from her acts and conduct, the Children's Services Division thereafter refused to grant [defendants] permission to adopt their grandchildren,

granted on several grounds: (a) that the negligent infliction of mental distress alone is not a theory of recovery recognized in Oregon; (b) the evidence of physical impact of mental suffering was insufficient to create a jury question; and (c) there was insufficient proof that plaintiff's report caused or was a substantial factor in causing the adverse determination by CSD. The second count (outrageous conduct or intentional infliction of mental distress) was also dismissed for failure to prove causation and on the ground that plaintiff's conduct here would not be considered outrageous under any circumstances. We agree that defendants failed to prove causation and therefore affirm.

In reviewing orders granting nonsuits, the evidence and inferences drawn therefrom must be viewed in the light most favorable to the party moved against and conflicts of evidence resolved in that party's favor. *Wooten v. Dillard,* 286 Or 129, 592 P2d 1021 (1979). A nonsuit should not be granted if there are facts in the record from which reasonable jurors might reach different conclusions. *Davis v. Portland General Electric Co.,* 286 Or 195, 199, 593 P2d 1135 (1979).

Since the ultimate CSD decision was the same as the tentative recommendation of the committee prior to submission of the report, it would appear that the report was not itself the cause of the adverse decision. The question is, assuming for the moment that plaintiff had a duty to disclose her prior letter to CSD or otherwise make known to defendants her prior opinion, would a favorable report have made a difference

and CSD has indicated that once the plan for placement of the children formulated by [CSD] is put into effect, [defendants] will never again see or hear of their grandchildren."

Even if plaintiff had a separate duty to disclose the existence of the prior letter to CSD and that duty was breached in this case, defendants, for reasons stated in the body of the opinion, failed to prove the report had a discernible impact on the CSD decision which was the immediate cause of defendants' emotional upset. It follows that striking this allegation, if it was error, was harmless.

[317]

in the outcome? The best inference that could be drawn is that a report favorable to defendants would have been factored in with the numerous other documents considered by the agency. There is no evidence that CSD by law or in fact accords particular weight to reports of this kind. CSD did not request the report or express any particular need for such a study since the Grahams had been interviewed by others whose reports were before the committee. The evidence shows on the contrary that CSD delayed its decision as an accommodation to defendants. Nothing in the report was new to any of the committee members. In short, defendants have failed to show that the report, favorable or unfavorable, had any particular impact on the CSD decision. While the jury could permissibly infer the report was considered, there was no basis other than speculation upon which it could have concluded plaintiff's report made any difference whatsoever in the outcome.

Affirmed.