Loraine MULLINS; Charles Mullins, Plaintiffs–Appellants,

v.

STATE OF OREGON; Oregon Children's Services Division; Kay Dean Toran, Administrator; Mary Acklin, Defendants–Appellees.

No. 94–35777.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1995.

Decided June 12, 1995.

Michael D. Linick, Gary Carl & Associates, Eugene, OR, for plaintiffs-appellants.

Katherine H. Waldo, Asst. Atty. Gen., Salem, OR, for defendants-appellees.

Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

We must decide whether biological connection, standing alone, gives a grandmother a constitutionally protected liberty interest in the adoption of her grandchildren. We conclude that it does not and affirm the district court's dismissal of this case.

## I.

This case concerns the lives of two Oregon children. Loraine and Charles Mullins, both Washington residents, wish to adopt the two children. Loraine Mullins is the children's paternal grandmother. Charles Mullins, who only recently married Loraine, has no blood relation to the children. He is, if there be such a thing, the children's step-grandfather.

The children were abused and neglected by their parents. When the abuse came to light, state authorities stepped in, removed the children from their home, and initiated proceedings to terminate the parental rights. Ultimately, the mother voluntarily relinquished her rights in the children. The father's rights were terminated involuntarily pursuant to Oregon law.

While the termination proceedings were pending, the Mullinses filed an adoption petition in the Klamath County Juvenile Court. See Oreg.Rev.Stat. § 109.309. The juvenile court did not immediately act upon the petition. Instead, it waited until the termination proceedings had been concluded before taking up the issue of where to place the children. At that time, the juvenile court permanently committed the children to the custody of Oregon's Children's Services Division ("CSD"). This put the fate of the Mullinses' adoption petition squarely in the hands of CSD, because under Oregon law CSD enjoys the exclusive authority to consent *in loco parentis* to the adoption of children permanently committed to it. See Oreg.Rev.Stat. §§ 109.316(1)(b), 109.390(3).

The administrative rules governing CSD specify that relatives have no "right" to the adoption of children in CSD custody. See Oreg.Admin.Rule 412–27–045. The same rules, however, provide that CSD will give relatives, including grandparents, "first consideration" in the adoption of a child if the relative has established a "parent-child relationship" with the child. Oreg.Admin. Rule 412–30–028(1). A relative is said to enjoy a "parent-child relationship" with a child if the relative has provided for the physical and psychological care of the child for at least six months prior to the filing of the adoption petition. See Oreg.Rev.Stat. § 109.119(4).[1] The Mullinses concede that they did not qualify for this preferential treatment of their adoption petition, because neither of them had established a parent-child relationship with their grandchildren. In fact, by their own admission, the Mullinses never have had more than minimal contact with their grandchildren, seeing them only occasionally and even then only for a few hours at a time.

CSD thus treated the Mullinses' adoption petition as any other. It considered the Mullinses' request but ultimately refused to consent to the adoption. In accordance with Oregon law, CSD did not offer the Mullinses a hearing on its decision to oppose the adoption. See Oreg.Admin.Rule 412–30–036(2). Nor did CSD give the Mullinses a formal, reasoned explanation for its decision. Complaint at ¶ 14. The Mullinses allege that CSD's objection had nothing to do with their fitness as adoptive parents. They claim that CSD objected because it erroneously thought that it had to obtain the blessing of Washington authorities before it could send the chil-

---

1. Oreg.Rev.Stat. § 109.119(4) provides, in pertinent part, that a "parent-child relationship" is: [A] relationship that exists or did exist, in whole or in part, within the six months preceding the filing [of an adoption petition], and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. *Id.*

dren to live with the Mullinses in Seattle.[2] *See* Complaint at ¶ 16.

■ Whatever the reason for the objection, once CSD withheld its consent to the adoption, that was the end of the road for the Mullinses. The juvenile court had no choice but to dismiss their adoption petition for want of jurisdiction. *See* Oreg.Rev.Stat. § 109.316 (providing that CSD must consent to adoption of children in its custody); *see also In re Adoption of Greybull,* 29 Or.App. 889, 565 P.2d 773, 774–75 (1977) (holding that CSD's consent is jurisdictional fact that must be pleaded in adoption petition). The juvenile court dutifully dismissed the Mullinses' adoption petition on July 13, 1994. *See* Klamath County Juvenile Court June 20, 1994, Letter Opinion at 2 (dismissing for lack of jurisdiction). The Mullinses had no statutory right of appeal. *See In re Adoption of Greybull,* 565 P.2d at 774–75.

■ Although the Mullinses could not have appealed the juvenile court's dismissal of their adoption petition, they could have challenged CSD's withholding of consent under Oregon's Administrative Procedures Act. *See* Oreg.Rev.Stat. § 183.484; *see also Adams v. Oregon State Children's Services Div.,* 131 Or.App. 396, 886 P.2d 19, 22–25 (1994) (in banc) (holding that prospective adoptive parents may challenge to CSD's refusal to consent under the Act), *rev. denied by* 321 Or. 137, 894 P.2d 468 (1995). The Mullinses, however, chose not to bring an administrative challenge. Instead, they elected to file this federal civil rights action under 42 U.S.C. § 1983 claiming violations of their substantive and procedural due process rights to the society of their grandchildren.

■ The district court dismissed the Mullinses' action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Our review is de novo. *See Everest and Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994).

## II.

The State urges us to dismiss this appeal on jurisdictional grounds. It argues that the district court lacked subject matter jurisdiction over the underlying dispute because it, in effect, was asked to review the juvenile court's dismissal of the Mullinses' adoption petition. This argument has no merit.

■ We recognize of course that a federal district court, as a court of original jurisdiction, may not review the final determinations of a state court. *See, e.g., District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). This is true even when federal constitutional issues are at stake. *See Worldwide Church of God v. McNair,* 805 F.2d 888, 891 (9th Cir.1986). But the Mullinses have not asked the federal courts to review a final determination of any state court.[3] Instead, they have launched a due process challenge to Oregon's treatment of their claim to the adoption of their grandchildren.

■ The juvenile court never considered the Mullinses' constitutional claims. Nor could it have. *See Adams v. Oregon State Children's Services Div.,* 886 P.2d at 22–23 (holding that juvenile court has no jurisdiction to consider constitutional claims). As a result, this federal proceeding is hardly "inextricably intertwined" with the juvenile court's dismissal of the Mullinses' adoption petition. We hold that the district court had subject matter jurisdiction of this case. *See*

**2.** Oregon's Interstate Compact on the Placement of Children governs the interstate adoption of Oregon children. *See* Oreg.Rev.Stat. § 417.200. Under Article III of the Compact, Oregon authorities may not place a child in another state unless that state certifies that the placement is in the interest of the child. Art. III(d), *codified at* Oreg. Rev.Stat. § 417.200.

Washington officials refused to certify the placement in this case because the Mullinses refused to turn over to Washington authorities the results of a psychological examination of Loraine Mullins. The examination, which was somewhat negative in tone and recommendation, was performed by a Washington doctor selected by the Mullinses.

**3.** The Mullinses concede that CSD's refusal to consent deprived the juvenile court of jurisdiction over their adoption petition. They do not ask us to review that dismissal.

*Dubinka v. Judges of Superior Court,* 23 F.3d 218, 221–222 (9th Cir.1994).

## III.

■ The Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment to include a substantive component that protects certain individual liberties from state interference, no matter what process is given, unless the infringement is narrowly tailored to achieve a compelling state interest. *See Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993); *Collins v. City of Harker Heights,* 503 U.S. 115, 123–25, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). The Mullinses claim that their interest in the adoption of their grandchildren is entitled to the substantive protection of the Due Process Clause. They contend that Oregon unjustifiably abrogated this interest when it blocked the adoption of their grandchildren.[4]

■ We begin by noting the narrow range of liberty interests that substantive due process protects. Only those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause. *See Michael H. v. Gerald D.,* 491 U.S. 110, 122, 109 S.Ct. 2333, 2341–42, 105 L.Ed.2d 91 (1989) (plurality opinion); *Bowers v. Hardwick,* 478 U.S. 186, 191–92, 106 S.Ct. 2841, 2844–45, 92 L.Ed.2d 140 (1986); *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), *overruled on other grounds, Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *see also Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (describing fundamental liberty interests as those that are "implicit in the concept of ordered liberty"); *overruled on other grounds, Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). This nation's democratic tradition, moreover, demands our reluctance to expand the substantive protection of the Due Process Clause, lest the only limits upon the judicial veto become the predilections of those who happen to be members of the federal judiciary. *See Michael H. v. Gerald D.,* 491 U.S. at 121, 109 S.Ct. at 2341 (citing *Moore v. City of East Cleveland,* 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977)); *see also Calder v. Bull,* 3 U.S. (3 Dall.) 386, 398–400, 1 L.Ed. 648 (1798) (opinion of Iredell, J.). As Justice White has observed:

> That the Court has ample precedent for the creation of new constitutional rights should not lead it to repeat the process at will. The Judiciary, including this Court, is the most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or even the design of the Constitution.

*Moore v. City of East Cleveland,* 431 U.S. at 544, 97 S.Ct. at 1958 (White, J., dissenting) (*quoted in Michael H. v. Gerald D.,* 491 U.S. at 122, 109 S.Ct. at 2341–42).

Our first task in this case is to describe carefully the asserted liberty interest. *See Collins v. City of Harker Heights,* 503 U.S. at 123–25, 112 S.Ct. at 1068. In their complaint, the Mullinses claim a "fundamental constitutional right under the . . . Fourteenth Amendment[ ] . . . to keep the family intact and to have physical or legal custody of the[ir] grandchildren or both." Complaint at ¶ 21. We agree with the State, however, that this does not paint an entirely accurate picture of the interest here truly at stake. No matter what the Mullinses claim, this is not a case about breaking up an extant family unit. Simply put, there never has been any familial relationship between the Mullinses and their grandchildren. Indeed, it appears that the Mullinses have rarely even visited the chil-

---

4. The State contends that the district court should have abstained from considering the Mullinses' constitutional claims pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We disagree. *Younger* abstention is inappropriate, among other reasons, because there are no ongoing state proceedings relating to this case. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The State also argued in its brief that the district court should have abstained under the principles articulated in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). However, it withdrew this argument at oral argument once it became clear that there is no basis here for *Pullman* abstention. We do not further address the issue.

dren, let alone established a "family" in any meaningful sense.

■ What this case is really about is creating a new family unit where none existed before. That is, the asserted interest is one in a potential, still undeveloped familial relationship with prospective adopted children. In every material respect except one, this asserted interest is identical to the interest every prospective adoptive parent has in the child he wishes to adopt, and whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest. *See Ellis v. Hamilton,* 669 F.2d 510, 513–14 (7th Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). All that distinguishes this case is the biological link that Ms. Mullins shares with her grandchildren. The question we must decide, therefore, is whether biological connection between putative adoptive parent and child, standing alone, gives rise to a fundamental liberty interest entitled to the substantive protection of the Due Process Clause.

■ Neither the text nor the structure of the Constitution supports the asserted interest. Nor have we found any case that does. The Mullinses' reliance on *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), is surely misplaced; *Moore* was a case about breaking up an existing family unit, not a case about creating an entirely new one. The Supreme Court in *Moore* considered an East Cleveland zoning ordinance that forbade a grandmother from living with one of her two grandchildren. The Court struck the ordinance down, the plurality explaining that it violated the grandmother's fundamental right to reside with the grandchild with whom she had established a long-standing custodial relationship. *Id.* at 499, 503–06, 97 S.Ct. at 1935–36, 1937–39 (plurality opinion). *Moore* has no application to this case. A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth. *Cf. Lipscomb v. Simmons,* 962 F.2d 1374, 1378–79 (9th Cir.1992) (en banc).

Appellants' reliance on the Utah Supreme Court's procedural due process decision in *Wilson v. Family Services Division,* 554 P.2d 227 (Utah 1976), is similarly unavailing. The Utah court in *Wilson* found that a grandmother had "some dormant or inchoate right" in the custody of her grandchild, *see id.* at 231, but it stopped well short of even suggesting that this right rose to the level of a fundamental liberty interest. All the *Wilson* court held was that the grandmother was entitled to some sort of notice and hearing on her adoption petition. *Id.* As we explain below, we disagree with the Utah court's decision, even on its own terms. As for the Mullinses' citation to the three-judge panel's decision in *Lipscomb v. Simmons,* 884 F.2d 1242 (9th Cir.1989), that decision was vacated when we took the case en banc. *See* 962 F.2d 1374 (9th Cir.1992) (en banc). We decline the Mullinses' invitation to resurrect it now.

We have found no other authority supporting the proposition that a grandparent, by virtue of genetic link alone, enjoys a fundamental liberty interest in the adoption of her grandchildren. The mere novelty of the claim is reason enough to doubt that substantive due process sustains it. *See Reno v. Flores,* —— U.S. at ——, 113 S.Ct. at 1447; *see also Michael H. v. Gerald D.,* 491 U.S. at 125, 109 S.Ct. at 2343 (noting that the party claiming a fundamental liberty interest has the burden of establishing it). But we need not rest our decision on novelty alone. The Supreme Court has made clear that a father's genetic link to his daughter, standing alone, does not give the father a fundamental right to her custody. *See Lehr v. Robertson,* 463 U.S. 248, 256–65, 103 S.Ct. 2985, 2990–96, 77 L.Ed.2d 614 (1983); *see also Caban v. Mohammed,* 441 U.S. 380, 397, 99 S.Ct. 1760, 1770–71, 60 L.Ed.2d 297 (1979) (Stewart, J. dissenting) ("Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring."). We see no reason why an even more attenuated biological connection, such as the one between grandmother and grandchild, should merit greater constitutional protection. We conclude that Oregon's action in blocking the Mullinses' adoption of their grandchildren did not vio-

late the Mullinses' right to substantive due process.

## IV.

■ The more familiar office of the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a state. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). As the preceding sentence suggests, the requirements of procedural due process do not apply to every government action that adversely affects an individual. Rather, they apply only to deprivations of "life, liberty, or property" as those words have been interpreted and given meaning over the life of our republic. *See Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972); Henry Monaghan, Of "Liberty" and "Property," 62 Cornell L.Rev. 405, 415 (1977).

■ The Mullinses rely on a claim to a protected "liberty" interest in their grandchildren. In support of their asserted interest, the Mullinses repeat many of the arguments they made in connection with their substantive due process claim. Our analysis, however, is very different. Here, unlike in the substantive due process context, we need not search for a "fundamental" liberty interest, because the procedural component of the Due Process Clause protects more than just fundamental rights. It protects all liberty interests that are derived from state law or from the Due Process Clause itself. *See Hewitt v. Helms*, 459 U.S. at 466, 103 S.Ct. at 868–69; *Browning v. Vernon*, 44 F.3d 818, 821 (9th Cir.1995).

Our first task is again to examine the nature of the asserted interest. The Mullinses claim a protected liberty interest in the adoption of children with whom they never have enjoyed any significant custodial, emotional, or financial relationship. They offer only one basis for the asserted liberty inter-

est: the biological bond Ms. Mullins shares with her grandchildren. The question we must therefore address is whether this biological bond is sufficient to give rise to a protected liberty interest, either as a matter of state law or as a matter of our own interpretation of the Due Process Clause.

■ The Mullinses have not pointed to a single Oregon statute that confers upon grandparent a right of adoption on the basis of mere lineage. Our own research has revealed none. In case we were left with any doubt, the administrative rules that govern CSD specifically provide that relatives have no right to the adoption of children in CSD custody unless they have established a "parent-child" relationship. Oreg.Admin.Rule 412–30–028(1); *see also* Oreg.Rev.Stat. § 109.119(4) (defining parent-child relationship). The Mullinses admit that they have no such relationship. In these circumstances, the rules expressly divest grandparents of even the right to a hearing on the merits of their adoption petition. *See* Oreg.Admin.Rule 412–30–036(2). It is fair to say, then, that so far as state positive law is concerned, noncustodial grandparents have no more rights than strangers to the adoption of their grandchildren.[5]

Nothing in the common law is to the contrary. The Oregon courts have steadfastly refused to create a common law right of adoption on behalf of grandparents or any other blood relatives. *See, e.g. Graham v. Children's Servs. Div.*, 39 Or.App. 27, 591 P.2d 375, 377–79 (1979) (holding that grandparents have "no rights superior to that of a nonrelative applying for permission to adopt"); *see also Cox v. Stayton*, 273 Ark. 298, 619 S.W.2d 617, 620–21 (1981) (refusing to create any common law right to the custody or adoption of one's grandchildren). In fact, the Oregon courts have gone so far as to hold that even a *custodial* grandparent lacks a protected interest in the adoption of her grandchildren. *Graham*, 591 P.2d at 377–78 (considering appeal by grandmother who had

---

**5.** Noncustodial relatives at most have a "right to provide information about the child's background and to make recommendations for the child's future." Oreg.Admin.Rule 412–27–035. Although children in CSD's custody appear to

have some sort of right to be placed with family members over nonfamily members, this is a right that is personal to the child and may not be enforced in a proceeding brought by a relative. Oreg.Admin.Rule 412–27–045.

temporary custody of children for 14 months prior the filing of the adoption petition); *see also Browder v. Harmeyer,* 453 N.E.2d 301, 308–09 (Ind.Ct.App.1983) (similar); *but cf. In re P.C.,* 842 P.2d 364, 367 (Ok.Ct.App.1992) (holding that grandmother *in loco parentis* of her three grandchildren had protected liberty interest in their future care and custody).

We have, in short, found no statutory, administrative, or common law authority to support the liberty interest the Mullinses assert. As we read them, the relevant authorities are uniform in their refusal to recognize any right whatever to the adoption of one's grandchildren, at least where the only ties that bind are biological. That spells the end of this appeal unless, as the Mullinses ask us to do, we today create a grandparental right of adoption as a matter of federal constitutional law. This we cannot do.

The Mullinses argue that the "freedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment," citing *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796–97, 39 L.Ed.2d 52 (1974) and *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). With this we have no dispute. But as we have said, this is not a case that requires us to examine the liberties of an existing family unit. Rather, this is a case about creating an entirely new family. We have found no basis, other than the force of sheer pronouncement, upon which to ground such a grandparental right.

It is true that the Seventh Circuit, in a case not cited by the parties, has suggested that a relationship between grandparent and grandchild merits the same constitutional protection as that traditionally reserved for the nuclear family. *See Drollinger v. Milligan,* 552 F.2d 1220, 1227 n. 6 (7th Cir.1977) ("The nuclear family has traditionally consti-

tuted the unit afforded the protection of due process. We see no reason, however, not to extend this guaranty to the grandfather-grandchild relationship."). But the *Drollinger* court never explained its decision.[6] For this reason, the Seventh Circuit later expressly questioned its precedential value, *see Ellis v. Hamilton,* 669 F.2d at 513, and we certainly do not find it helpful to the decision at hand.

Nor are we persuaded by the Utah Supreme Court's decision in *Wilson v. Family Services Division,* 554 P.2d 227 (Utah 1976). In *Wilson,* the Utah court held that a grandmother who had nothing more than a biological relationship with her grandchild was nonetheless entitled to a hearing on her adoption petition. *Id.* at 230–31; *see also State v. Wulffenstein,* 571 P.2d 1319, 1321–22 (Ut.1977) (similar). Although it is not clear whether the Utah Court based its decision on the federal or state constitution, we think its conclusion flowed from a sense that a grandparent's wish to adopt her grandchild was an aspiration worthy of protection by the courts. *But cf. Browder v. Harmeyer,* 453 N.E.2d 301, 308–09 (Ind.App.1983) (holding that grandmother who had intermittent custody of her grandchild had no protected liberty interest in the continued custody of the child). Although we do not dispute that the Mullinses' interest is genuine, we cannot agree that we should cloak it within the mantle of our federal constitutional law.

When a child is abandoned by his parents and placed with a state agency, the state's paramount concern must be the swift and suitable placement of the child. Oregon, and many other states, have concluded that the creation of new, enforceable rights in grandparents would burden rather than assist this process.[7] A contrary rule, for example, would inevitably delay adoptions as child placement decisions were transferred from

---

6. In *Drollinger,* Rosanna Drollinger and her father-in-law Nathan Drollinger brought a § 1983 challenge to the terms and conditions of Rosanna's state court probation. One of the probation conditions restricted Nathan's ability to associate with Stephanie Drollinger (Rosanna's daughter and his granddaughter). The *Drollinger* court held that this condition implicated Nathan's protected liberty interest in the society of his granddaughter. 552 F.2d at 1227. It held that the state violated due process by not giving Nathan a

hearing before imposing the condition as a term of Rosanna's parole agreement. *Id.* The court, however, offered no analysis of the nature, source, or extent of the grandfather's interest. It devoted only a two-sentence footnote to the subject.

7. *See Reed v. Glover,* 319 Ark. 16, 889 S.W.2d 729, 732 (1994) (holding that grandparent has no protected liberty interest in the visitation of a child of whom she once had custody); *In re*

the state welfare agencies to the courts. Also, we note that grandparents sometimes may be unsuitable adoptive parents precisely because of their blood relationship, especially in cases of abuse such as this in which there may be a well founded fear that the grandparents will be unable to protect the children from future parental contact and abuse. Decisions of this nature are best left to the state authorities who daily deal with such questions in conjunction with the procedures, neither challenged nor invoked here, that provide for administrative and judicial review of their decisions.

We therefore conclude that grandparents *qua* grandparents have no constitutionally protected liberty interest in the adoption of their children's offspring. In reaching this conclusion, we take notice of Oregon's Administrative Procedures Act, under which a grandparent—or anybody else who has filed an adoption petition—may challenge CSD's refusal to consent on legal or factual grounds. Oreg.Rev.Stat. 184.484(4); *see Adams v. Oregon State Children's Services Div.*, 886 P.2d at 21–24; *State ex rel. Juvenile Dep't v. Rivers (In the Matter of C.S.)*, 131 Or.App. 512, 886 P.2d 1024, 1027 (1994).

## V.

In their final assignment of error, the Mullinses argue that the district court should have allowed them to amend their complaint before dismissing their case. However, they have not identified any factual allegation they could make that would allow them to prevail on a motion to dismiss. The district court did not err.

**AFFIRMED.**

*Adoption of Taylor*, 678 S.W.2d 69, 71–73 (Tenn. Ct.App.1984) (surveying law of other states and concluding that grandparents have no constitutionally protected interest in the society of their grandchildren); *Browder v. Harmeyer*, 453 N.E.2d 301, 308–09 (Ind.Ct.App.1983) (noting that Indiana grandparents have statutory right of visitation but refusing to recognize any constitutional right of adoption, even on behalf of grandmother who had enjoyed intermittent custody of the child); *Graham v. Children's Servs. Div.*, 39 Or.App. 27, 591 P.2d 375, 377–79 (1979) (grandparents have no protected liberty interest in adoption of grandchild); *cf. In re Brandon S.S.*, 179 Wis.2d 114, 507 N.W.2d 94, 106–07 (1993) (noting that grandparents have no cognizable interests in the society of their grandchildren, but holding that they have statutory right to provide information in an adoption proceeding).