Argued October 22, remanded with directions December 15, 1975

MORGAN, *Petitioner, v.* MacLAREN SCHOOL
(CA 4737), *Respondent.*
543 P2d 304

*James W. Nass,* Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the briefs for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Petitioner, 16 years old, seeks reversal of an "Order of Revocation of Foster Care [Parole] Placement" entered by the resident superintendent of the MacLaren School, a department of the state's Children's Services Division (CSD). The proceeding is under authority of the Administrative Procedures Act (APA) (ORS 183.310-183.500). Petitioner contends that the proceedings leading up to the entry of that order failed in several respects to meet the constitutional due process requirements outlined by the Supreme Court in *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972). As a preliminary matter, CSD has moved to dismiss the appeal because, as it asserts, exclusive jurisdiction in the matter is conferred on the juvenile court which made the commitment of the child.

Both parties agree that the Children's Services Division is not among those agencies exempt from the provisions of the APA by ORS 183.315. Under the terms of ORS 183.480(2) administrative orders arising from "contested cases" must be appealed directly to this court for judicial review. A juvenile parole revocation proceeding falls within the definition of a "contested case" under the APA (ORS 183.310(2)). CSD submits nonetheless that a specific statutory policy of retaining jurisdiction in the juvenile courts of *all* matters affecting the rights of a child committed to the custody of CSD requires dismissal of this appeal.

ORS 419.507(2)(f) provides that

> "[c]ommitment of a child to the Children's Services Division does not terminate the court's continuing jurisdiction to protect the rights of the child or his parents or guardians."

This has been interpreted as extending the authority of the juvenile court to affirmatively participate in all matters affecting the protection of the "rights of the child or his parents or guardians" if the child has been placed by that court in the custody of the CSD. *See State ex rel Juv. Dept. v. Richardson,* 267 Or 374, 517 P2d 270 (1973); *Children's Services Div. v. Weaver,* 19 Or App 574, 528 P2d 556 (1974). The statute has not been interpreted in any context similar to that in this case.

██ The underlying purpose of the APA is to provide a simple and uniform procedure for review of administrative action. ORS 183.480(1)(b) provides:

> "Judicial review of final orders of agencies shall be *solely* as provided by ORS 183.480 * * *." (Emphasis supplied.)

The statutes should be read together, and, if possible, meaning should be given to both. Interpretation of

ORS 419.507(2)(f) as requiring the jurisdiction of juvenile courts to encompass appeals from final orders of an administrative agency to which the APA is applicable would conflict with the purpose of the APA and be contrary to what appears to be the clear intent of the legislature. *School Dist. No. 48 v. Fair Dis. App. Bd.*, 14 Or App 35, 512 P2d 799 (1973). Allowing full play of ORS 419.507(2)(f) in matters like those litigated in *Richardson* and *Weaver* but restricting its meaning to exclude matters such as that here litigated gives meaning to both statutes. Respondent's motion to dismiss is denied..

Petitioner was "paroled" from MacLaren School in March 1974 and was placed in Portland with the Youth Progress Association—a group foster home—on April 3, 1975. The activity program—i.e., "conditions of parole"—required him to remain within the care and control of the Association, to abide by the Association's rules, and to attend a local high school on a regular and full-time basis. The program also prohibited petitioner from traveling from the Portland area without the express permission of the Association's staff and his parole counselor.

On April 14, 1975 petitioner received a "Notice of Preliminary Hearing" informing him that "Juvenile Parole authorities" had recommended revocation of his parole on the grounds that he had

> "[f]ailed to remain within the care and control of your foster care placement * * * by leaving said facility on or about April 10, 1975 and failing to return voluntarily * * *."

The notice also indicated that a hearing would be held that same day to determine if there was, in fact, "probable cause" to believe that he had violated the conditions of his parole in the manner alleged. Although present at the preliminary hearing, petitioner chose to remain silent, neither admitting nor denying

the allegation that he had fled from the Youth Progress facility. Based upon the status report introduced by the "Juvenile Parole Section," the hearings officer concluded that there was probable cause to believe that a, violation had occurred and recommended that a formal revocation hearing be convened.

At the hearing petitioner admitted—by means of a stipulation—that he had left the group home and failed to report to school on April 9 with the intent of leaving the Portland area, all in violation of the conditions of his parole. Petitioner then sought to introduce evidence relating both to mitigating circumstances and to the feasibility of an alternate placement. The hearings committee chairman refused to permit the evidence, holding that:

> "* * * [T]he only issue before this committee is that of whether or not the parolee, Patrick Morgan, violated the terms and conditions of the community placement in which he was living * * * in accordance with the allegations that are contained in the notice of this hearing * * * and any evidence relating or alleged to relate to circumstances leading up to the acts that may constitute the grounds for revocation of his parole, whether it is characterized by mitigating evidence or otherwise is not felt to be relevant, nor is it felt by the committee that evidence relating to * * * the future planning for Patrick Morgan—is the function of this committee * * *."[1]

---

[1] Counsel was, however, permitted to make an offer of proof in narrative form of the evidence he was seeking to introduce. That evidence was represented by counsel to consist of the testimony of some seven witnesses, including petitioner's mother, father and sister, all of whom would have either attempted to "throw light on the reasons" for petitioner's behavior or outlined plans for providing a viable living arrangement should his parole be continued. By holding in this opinion that the proffered evidence should have been heard and considered, we do not hold that if it had become merely repetitious and cumulative the committee was required to listen to all of it.

CSD concedes that the *"Morrissey* requirements" are equally applicable where the individual faced with the loss of his or her "conditional liberty" is a juvenile. *See State ex rel. D. E. v. Keller,* 251 So 2d 703 (Fla App 1971); *People ex rel. Silbert v. Cohen,* 29 NY2d 12, 16, 323 NYS2d 422, 271 NE2d 908 (1971) (this case stated that the juvenile is entitled to a hearing with counsel to "marshal the facts and introduce evidence of mitigating circumstances * * *"); *State ex rel. Bernal v. Hershman,* 54 Wis 2d 626, 196 NW2d 721 (1972). We agree with those precedents.

Discussing the parole system in Oregon, and specifically the parole revocation process subsequent to *Morrissey,* one commentator has noted that a decision to revoke involves two separate determinations:

"* * * The first is a narrow factual determination that the parolee has committed an act which is a violation of his parole. This determination includes findings regarding the circumstances in which the violation occurred. Generally the Board's factual determination is either admitted or not actively contested by the parolee, because revocation proceedings are seldom initiated unless there has been a clearcut violation. If the parole officer's allegations are disputed, the source of dispute is more likely to concern the circumstances surrounding the charge rather than the violation itself, which often appears on its face to be only a technicality.

"The second determination in the revocation decision is whether the violation and the circumstances in which the violation occurred justify revocation, giving due consideration to the parolee's overall conduct. To decide, the Board must weigh the severity of the parolee's conduct in the situation in which a violation was found against mitigating factors regarding the parolee's overall conduct. This weighing of adverse and mitigating factors is a value judgment involving a prediction

of the risk of continued socially prescribed conduct by the parolee.

"The' state has the initial responsibility of producing evidence indicating the occurrence of a violation and the presence of surrounding circumstances serious enough to justify revocation. Generally, the evidence is the investigating parole officer's report, which was the basis for his recommendation that parole be revoked. If the Board determines that a violation has occurred, the parolee must produce evidence substantiating the existence of mitigating factors which persuade the Board that revocation is not justified. Such mitigating evidence may involve an explanation of the situation in which the violation occurred or the introduction of information regarding the parolee's general conduct which is not directly related to the circumstances of the violation."[2] (Footnotes omitted.)

*See also Huckaby v. Newell,* 16 Or App 581, 519 P2d 1290 (1974).

 *Morrissey* holds that the first step in a revocation decision involves the "wholly retrospective factual question" (408 US at 479) of whether a parolee has actually violated one or more of the conditions of his parole. A finding that violations have, in fact, occurred necessarily leads to a second question: Is revocation appropriate under the circumstances of the particular case or should other steps which might both protect society and improve the parolee's chances of rehabilitation be taken?[3] Because, therefore, a revocation hearing must lead to *both* a final evaluation of any contested relevant facts *and* a considera-

[2] Comment, *Due Process for Parolees: Oregon's Response to Morrissey v. Brewer,* 53 Or L Rev 57, 59-60 (1973).

[3] Juvenile authorities did, in fact, introduce much evidence relating to petitioner's attitude and conduct in the community generally.

tion of whether the facts as determined warrant revocation,

"* * * [t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, *or, if he did, that circumstances in mitigation suggests that the violation does not warrant revocation* * * *."[4] (Emphasis supplied.) 408 US. at 488.

Where, as here, a parolee has admitted violating a condition of his parole, he is entitled, under *Morrissey,* as a matter of due process to introduce evidence militating against revocation in his case.[5]

"Breach of parole conditions is a necessary but not sufficient ground for parole revocation, for the board is required to determine whether the violator is still a good parole risk, and he may bring

---

[4] ORS 144.343 provides that the written notice to which an adult parolee is entitled prior to the commencement of a revocation proceeding must include notice of:

"(f) The parolee's right to be represented by counsel and, if indigent, to have counsel appointed at state expense if the board or its designated representative determines, after request, that the request is based on a timely and colorable claim that:

"* * * * *

"(B) Even if the violation is a matter of public record or is uncontested, there are substantial reasons which justify or mitigate the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present * * *." ORS 144.343(3)(f)(B).

*See* Gagnon v. Scarpelli, 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973). ORS 144.345 provides that the State Board of Parole may revoke an adult's parole where it finds

"* * * such person has violated one or more conditions of parole *and the evidence offered in mitigation does not excuse or justify the violation* * * *.

"* * * * *." (Emphasis supplied.)

[5] Petitioner's "Parole Counselor" testified that an unauthorized absence from a placement in violation of the conditions of parole will "not necessarily" result in a recommendation of revocation, and that a parolee's "attitude" and "past progress" are factors entering into any such decision.

extenuating factors to the board's attention * * *." *Caton v. Smith,* 486 F2d 733, 735 (7th Cir 1973). *See also Preston v. Piggman,* 496 F2d 270 (6th Cir 1974). Petitioner was erroneously denied an opportunity to introduce the evidence offered.[6]

ORS 183.480(7)(a) provides that we may "affirm, reverse or remand the order," the latter two, inter alia, if an error in procedure prejudices the "substantial rights of the petitioner." Inasmuch as a substantial right of the petitioner under *Morrissey* was prejudiced, the case is remanded for taking and consideration of the proffered evidence.

Remanded with directions.

---

[6] We have considered petitioner's additional assignments of error but do not consider them of sufficient merit to justify comment.

In coming to the conclusions expressed in this opinion, we have been aware of ORS 420.045(3) which provides that "The Administrator of the Children's Services Division * * * may revoke a parole * * *." It has not been contended on this appeal that this statute in any way governs the case at bar, and we have noted that it was enacted in 1965 and last amended in 1971, before Morrissey v. Brewer, 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972).