Argued and submitted June 16, reversed and remanded August 6, 1986

In the Matter of Gillman,
Crystal Suzanne, Matthew,
Stephanie N., and Penny J., Children.

STATE ex rel JUVENILE DEPARTMENT
OF COLUMBIA COUNTY,
*Appellant,*

*v.*

GILLMAN,
*Respondents.*

(4267; CA A37368)

723 P2d 341

Philip Schradle, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Ray Smitke, Lake Oswego, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a state's appeal from the juvenile court's dismissal of petitions alleging that respondents' children were within the jurisdiction of the court. The issue is whether the juvenile court properly dismissed the petitions following a shelter care hearing but before an adjudicatory hearing on the merits. We reverse.

On August 15, 1985, four children were removed from the home of the Gillmans on the basis of allegations that their welfare was endangered. Petitions were filed on August 19, 1985, alleging that each child was within the jurisdiction of the juvenile court because of physical and mental abuse. A juvenile court shelter care hearing was held on August 19 and 22 to determine whether the children should be placed in shelter care pending a determination on the merits of the petitions. The court heard testimony from numerous witnesses. Not only did it ultimately conclude that shelter care was not necessary, but the court also determined—on its own motion—that there was no probable cause for the court's jurisdiction. Thereupon, it entered an order dismissing the petitions.

The state argues that the trial judge erred in addressing the ultimate issue, whether the juvenile court should assert jurisdiction over the children, at the conclusion of the preliminary shelter care hearing. It asserts that, because it was only attempting to establish the need for shelter care and was therefore only required to show that the welfare of the children might be endangered by their release until a full evidentiary hearing could be held on the petitions, the state was not prepared—nor should it have been expected to be prepared—to adjudicate the ultimate question of jurisdiction. The state represented to the court that it needed time to complete its investigation of the serious allegations of abuse and had 20 to 30 potential witnesses who might be able to provide crucial testimony regarding child abuse for the adjudicatory hearing. In short, the state was telling the court that it had not yet had the opportunity to present the "full story." Respondents contend that ORS 419.482(5) allows the court to dismiss a petition at any stage of the proceedings and that, because the state presented all of its available evidence at the shelter care hearing, dismissal was proper.

The juvenile court statutes of this state set out requirements and procedures for two types of court hearings. One type, referred to as "jurisdictional," involves proceedings which begin with the filing, by "any person," of a petition alleging that a child is within the jurisdiction of the juvenile court. ORS 419.482(1). A person under 18 years of age is within the jurisdiction of the juvenile court if the child's "behavior, condition or circumstances are such as to endanger the welfare of" that child. ORS 419.476(1)(c). ORS 419.486(1) provides:

> "Promptly after the petition is filed, there shall be an investigation of the circumstances concerning the child."

Not later than 60 days after the petition is filed, a summons may be issued requiring the person having physical custody to bring the child before the court at a set time. ORS 419.486(1). "The time for the hearing on the petition shall be fixed at a reasonable time, not less than 24 hours, after the issuance of the summons." ORS 419.486(3). At the hearing, the facts in the petition alleging that the court has jurisdiction "must be established by a preponderance of competent evidence." ORS 419.500(1). At the termination of the hearing, the court enters an order "directing the disposition to be made of the case." ORS 419.505.

The other type of hearing, referred to as a "preliminary" or "shelter care" hearing, involves proceedings which begin when a child is taken into temporary custody and a short-term placement decision must be made. The procedure and authority for temporary custody and shelter care is different from the jurisdictional petition. Although "the court may make an order providing for temporary custody" of a child at any time after a petition is filed, ORS 419.482(3), a petition is not a prerequisite for temporary custody. In fact, a child may be taken into temporary custody and placed in shelter care *before* any petition is filed. ORS 419.569(1)(b) allows certain authorities to take a child into temporary custody "[w]here the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare." The child must be released to the custody of the parent or other responsible person, except "[w]here the person taking the child into custody has probable cause to believe that the welfare of the child or others may be immediately endangered by the release of the child." ORS 419.573(2)(b).

If not released to the parent, the child may be placed in shelter care. ORS 419.577(1)(d). Shelter care cannot continue for "more than 24 hours, excluding Saturdays, Sundays and judicial holidays, except on order of the court under ORS 419.600." ORS 419.577(3)(a). ORS 419.600 sets out procedures for a hearing at which the child's parent "shall be given the opportunity to present evidence * * * that the child can be returned home without further danger of suffering physical injury or emotional harm." ORS 419.577(3)(b). Finally, following the hearing, the court may order a child to be placed in shelter care before an adjudication on the merits, ORS 419.600(1), but "[t]he court must make a finding of probable cause as to the court's jurisdiction." ORS 419.600(2)(a).

It is readily apparent that the two types of hearings have totally different purposes. The shelter care hearing, which *must* be held within 24 hours after the child is taken into temporary custody, is limited to whether there is immediate danger if the child is returned home pending the ultimate disposition of the case. In contrast, the jurisdictional hearing goes to the ultimate disposition of the petition. The statutorily required investigation of the allegations in the petition allows the state time to gather evidence or to determine that the allegations are unfounded.

With those distinctions in mind, we now turn to the statutes on which respondents rely most heavily. ORS 419.482(5) provides: "The court may dismiss the petition at any stage of the proceedings." ORS 419.600(2)(a) provides that, before the court can order shelter care, it must find probable cause for juvenile court jurisdiction. Here, the petitions had been filed before the shelter care hearing began. Respondents argue that the juvenile court correctly determined that there was no probable cause for jurisdiction and that, therefore, the petitions should be dismissed. We agree with respondents that a petition *may* be dismissed following a shelter care hearing. Certainly, dismissal would be appropriate in many instances, such as when the allegedly endangered person is no longer under 18 years of age, or when the state concedes that it will have no further evidence to present at the jurisdictional hearing, or when the petition is patently frivolous. However, we hold that dismissal was improper under the circumstances of this case. ORS 419.600(2)(a) is simply a threshold procedural requirement that protects against orders

for shelter care in obviously inappropriate instances. If there is no cause to order shelter care, because there is no immediate danger to the child, then there is no reason to make a finding of probable cause. However, the absence of such a finding does not mandate that the state is forever precluded from the opportunity to establish jurisdiction with the presentation of additional evidence.

The state does not challenge the trial court's determination that shelter care placement was unnecessary in this case. On *de novo* review of the record, we agree with the juvenile court's finding in that regard. However, we disagree with the court's determination that it could—at the same time—decide that there was no probable cause for jurisdiction. Because the court found that it was unnecessary to order shelter care, it did not need to make a finding on probable cause. Although the evidence did not support an order for shelter care "before an adjudication on the merits" pursuant to ORS 419.600, there were unresolved allegations of abuse which the state should have had an opportunity to investigate and to bring before the court in a hearing on the petitions. Dismissal, on the court's own motion,[1] at that stage of the

---

[1] Although the judge articulated continuing concerns about the children's safety, he nonetheless dismissed the petitions. The judge's personal beliefs regarding the state's role in family matters is apparent in his statements at the close of the hearing:

"There is a real fine line, a real balance, that courts must take in deciding cases like this simply because for me to deprive a family of their children is for me to interfere with one of the pillars of our society, as far as this court sees, and I cannot substitute myself for a parent and tell another parent how they ought to discipline their children. I don't have the qualifications for doing that. I have been a parent myself and am a parent. I have raised two children but that certainly doesn't qualify me to tell you, Mr. and Mrs. Gillman, how to discipline your children. And although I may disagree with some of the things that you have done with your children, and I might tell you that I did not do what you have done with your children, that doesn't make a bit of difference any more than if you called me up and said, Hunnicutt, the way you are handling your kids, I think, is crummy. You might feel that way, but that is none of your business, and it is really none of my business here, even though I am a judge, and it is my business to the extent that these cases are here in juvenile court.

"* * * * *

"The other thing that I thought was significant was that the real question that has been raised by the people in the preliminary inquiry that I signed and the evidence that I have heard, is whether or not all the things that Mr. and Mrs. Gillman have done are appropriate. With the exception of holding the kids out from school for discipline, I might not agree with the methods used, but judging it from a community standard and not Judge Hunnicutt's standard, and I think that is the standard that I have to apply, you don't want, and I am speaking collectively

proceedings was effectively an adjudication on the merits of the petitions that denied the state its day in court on the ultimate issues.[2]

Reversed and remanded.

---

to you who are listening to me — you don't want one person being the head parent in the 19th Judicial District. You don't want me to do that. I didn't get elected to do that. I will leave the raising of children in Columbia County to the parents of Columbia County. I am not going to substitute my ideas and beliefs on that. * * *

"* * * * *

"* * * And as a judge of the state of Oregon I am telling you I want you to continue to raise your children in a method that you think is proper. It is none of our business, our business being the state of Oregon's business so long as you do not step over that line of community standard line that I have found at this point that you have not stepped over."

[2] We note that the record does not support respondents' statement that two of the children named in the petitions were called by the state to testify at the hearing. Named in the petitions are Crystal Suzanne, Matthew, Stephanie and Penny Gillman. The children who testified at the hearing were LeeAnn Gillman, Alex Salizar and Jenny Gillman. In addition, respondents assert that the trial court had been presented with "the whole story" and so was justified in reaching a determination on the ultimate issue. We fail to see how, when the state informed the court that it had other potential witnesses to interview, the trial court could know that it had been presented with the entire story.