Argued and submitted December 5, 1990, portion of order vacated; otherwise affirmed May 15, reconsideration denied October 2, petition for review denied October 29, 1991 (312 Or 235)

In the Matter of
Nikos Samuel Sunihanble Smith, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF CLACKAMAS COUNTY,
Children's Services Division,
Howard Smith and Mollie Smith,
*Respondents,*
*and*

Nikos Samuel Sunihanble SMITH,
*Appellant,*

*v.*

Cherie SMITH,
*Respondent.*

(J86-11-4; CA A63193)

811 P2d 145

Gay Canaday, Lake Oswego, argued the cause and filed the brief for appellant.

Richard Cohen, Portland, argued the cause and filed the brief for respondent Cherie Smith.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent Childrens Services Division. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance by respondents Howard Smith and Mollie Smith.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Child, a ward of the court, appeals a juvenile court order placing him with his mother.[1] At the age of three, child began living with his maternal grandfather and step-grandmother (grandparents), because mother's drug, alcohol and mental health problems made her unable to provide for his care. Mother and child had no contact for two years. Mother then stipulated that the juvenile court had jurisdiction over child. ORS 419.476(1)(e). He was made a ward of the court and was placed in the legal custody of Children's Services Division (CSD). ORS 419.507(1)(b). He continued to live with grandparents. The court ordered mother and her boyfriend, who reside in Washington, to submit to several evaluations and to fulfill certain conditions relating to employment and therapy.

Thereafter, the juvenile court entered several orders that, among other things, continued child as a ward of the court, continued his commitment to the legal custody of CSD, gradually shifted his primary residence from grandparents' home to mother's home and ordered that he be placed in mother's home on a particular date, subject to supervision by the state of Washington. Washington had refused to accept the case until mother and her boyfriend had complied with certain conditions.

Child challenges the portion of the order that places him with mother.[2] Mother agrees that, once CSD obtained legal custody of child, the juvenile court was authorized to make a placement *recommendation* but could not *order* CSD to place child with her. ORS 419.507(1)(b); *State ex rel Juv. Dept. v. Cooke,* 88 Or App 176, 179, 744 P2d 596 (1987); *State ex rel Juv. Dept. v. D., supra* n 1, 55 Or App at 916.

---

[1] We review juvenile court proceedings *de novo.* ORS 419.561(4). Child does not assign error to the order's visitation provisions or to his placement in the legal custody of CSD. Under ORS 419.511(4), "[w]hen the court grants legal custody to the Children's Services Division, it shall also grant guardianship of the child to the division * * *." *See also State ex rel Juv. Dept. v. D.,* 55 Or App 912, 915, 640 P2d 660 (1982). Therefore, this appeal presents only the legal question of the trial court's authority to order physical placement of child with mother.

[2] The juvenile court also considered a guardianship petition that grandparents had filed in probate court. The issue of whether the juvenile court had the authority to rule on that petition is not properly before us, because grandparents did not file a notice of appeal and are not parties to this appeal. A non-party cannot "join in" another's brief, as grandparents attempted to do here. Accordingly, the title of this case has been amended.

■ ■ An improper placement order may be treated as a recommendation, if the error is inadvertent or *de minimus*. *See, e.g., State ex rel Juv. Dept. v. Cooke, supra; State ex rel Juv. Dept. v. Chapter,* 68 Or App 110, 119, 681 P2d 1171 (1984). However, the error in this case was neither inadvertent nor an insignificant technical violation.[3] Frustrated by CSD's handling of the case, the court appears to have tried to accomplish indirectly, by use of strong declarations from the bench, what it could not accomplish directly. After determining that child was in need of protective supervision, the court said that it would nonetheless terminate both the court's wardship and CSD's legal custody and return child to mother, unsupervised, if CSD did not place child with mother. It also said:

> "The Court is well aware that the Court cannot order specific placements while custody is given to Children's Services Division. The Court can, however, and I don't know how this plays out in the long run, order that the placement CSD has chosen be changed, and I don't know how many times I can order it be changed until they get the right one or not, but I will say that this is a case in which games should not be played."

■ A court is not authorized to order changes in CSD's placement decisions until CSD gets "the right one." In this case, child's placement in a secure and healthy environment was not "so inappropriate as to violate the rights of the child or the child's parents or guardians." ORS 419.507(1)(b)(F). The court had no power to dictate CSD's placement.[4]

Portion of order placing child with mother vacated; otherwise affirmed.

---

[3] As part of our decision to stay the lower court's order, we made a preliminary finding that the juvenile court order merely expressed a *preference* for placement. However, we reached that conclusion without benefit of the whole record.

[4] We note that the trial court, in invoking the Interstate Compact on the Placement of Children, ORS 417.200 to ORS 417.260, misinterpreted the provision upon which it relied. The compact *does* apply to a child who is sent to another state for placement with parents or relatives, when someone *other* than a parent or relative makes the placement. *See* Oregon State Bar CLE, Juvenile Law Handbook, *Interstate Compact on Placement,* § 21.6 (1984 and 1988 Supp). Thus, had the court carried out its threat to terminate CSD's custody of the child in this case, it still would have had to comply with the Interstate Compact by waiting for notification from Washington that the proposed placement was not contrary to the child's welfare. ORS 417.200, Art III(d).