Argued and submitted February 4; resubmitted In Banc August 8, judgment in CA
A77343 reversed and remanded; order in CA A75412 reversed and remanded
November 23, 1994

## Lucie and William ADAMS,
### *Appellants,*

*v.*

## OREGON STATE
## CHILDREN'S SERVICES DIVISION,
### *Respondent.*

## (CCV 9202260; CA A77343 (Control))

### In the Matter of Dabney Crook-Phillips, a Child.

## STATE ex rel JUVENILE DEPARTMENT
## OF LANE COUNTY,
### *Respondent,*

*v.*

## Lucie ADAMS
## and William Adams,
### *Appellants.*

## (89-205; CA A75412)

886 P2d 19

In Banc*

Richard D. Cohen argued the cause and filed the brief for appellants.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

ROSSMAN, J.

Riggs, J., concurring in part; dissenting in part.

* Warren and Landau, JJ., not participating.

## ROSSMAN, J.

Petitioners seek review of a Clackamas County Circuit Court judgment dismissing their petition for judicial review, which challenged Children's Services Division's (CSD) denial of their request to adopt a child. They also appeal from a Lane County Juvenile Court order that summarily dismissed a petition in which they alleged that CSD had mistreated the child. The two cases were consolidated for appeal.[1] We reverse.

Petitioners, a wife and husband who live in Clackamas County, sought to adopt a six-year-old child who had been placed in their care by CSD.[2] After the child had lived with petitioners for approximately ten months, CSD terminated the pre-adoptive placement and removed the child from petitioners' home. Petitioners filed with the Clackamas County Juvenile Court a petition alleging that CSD had engaged in conduct that endangered the conditions and circumstances of the child and requesting that the court exercise protective jurisdiction over the child based on the following allegations: Before her ten months with petitioners, CSD had placed the child in approximately ten different foster care homes in one year, and, after forming psychological bonds with petitioners, the child had been removed from their home "without cause or facts consistent with the best interests of the child." The Clackamas County Juvenile Court transferred the petition to the Lane County Juvenile Court, which accepted the transfer and dismissed the petition on the same day. CSD issued a letter formally denying petitioners' request to adopt the child.

Petitioners then filed with the Clackamas County Circuit Court a petition for judicial review, pursuant to ORS 183.480, which is part of the Administrative Procedures Act (APA). The petition alleged that CSD's denial of their adoption request was "contrary to the best interests of the child * * * contrary to the legitimate contractual expectations of

---

[1] Although technically the Adams are "appealing" from the jurisdictional/dependency petition that was dismissed by the juvenile court and are "petitioning" for review of the petition for judicial review that was dismissed by the circuit court, we will refer to them as "petitioners" in both contexts.

[2] The child had been committed to the care and custody of CSD in 1991, in Lane County, when her biological mother's parental rights were terminated.

[petitioners] as the prospective adoptive home" and violated petitioners' constitutional rights.[3] The court dismissed the petition on the basis of its "finding" that the juvenile court is the only appropriate forum for petitioners' challenge. In concluding that an APA-based petition for judicial review, filed in circuit court, cannot be used to challenge CSD's denial of an adoption request, the court wrote that it was

> "specifically concerned about the child's rights to confidentiality, including records, and the child's lack of a party status in an action under ORS 183.484. The court is further concerned that in an action under ORS 183.484, such an action is not governed by a standard of the best interests of the child and the potential for conflict between the child's right to confidentiality and Petitioners' rights to review discovery makes juvenile court the exclusive appropriate forum for hearing Petitioners' requests."

■    Petitioners' first assignment of error is directed at the Clackamas County Circuit Court's conclusion that a petition for judicial review, filed pursuant to Oregon's APA, is not an appropriate vehicle by which to challenge CSD's denial of their request to adopt the child. The relevant statute, ORS 183.480(1), provides:

> "Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order whether such order is affirmative or negative in form."[4]

Petitioners contend that the circuit court erred in dismissing their petition for judicial review, because CSD is a state agency and petitioners were "aggrieved" by the agency's denial of their adoption request.[5] The state argues that the circuit court correctly concluded that the *juvenile court* is the only forum for hearing challenges of this type.[6]

---

[3] Petitioners argued that CSD had removed the child partly because of their lifestyle, which is based on their practice as Seventh Day Adventists.

[4] ORS 183.484(1) provides, in part:

> "Jurisdiction for judicial review of orders [in] other than contested cases is conferred upon the Circuit Court for Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office."

[5] It is undisputed that CSD's formal letter of denial constituted a "final order," which is defined as a "final agency action expressed in writing." ORS 183.310(5)(b).

[6] It should be noted, at the outset, that most juvenile courts are part of the circuit court system. However, this opinion discusses the unique legal authority that

We begin by noting that the scope of this case is quite limited. It involves only those prospective adoptive parents who have requested and been denied CSD's consent to their adoption of children whom a juvenile court has permanently committed to CSD after terminating the rights of the children's biological parents because of abuse or neglect. No adoption petition has been filed. Within this narrow context, we first examine whether CSD's denial of consent can be challenged in juvenile court or in circuit court under the APA.

The child whom petitioners seek to adopt is within the jurisdiction of the Lane County Juvenile Court as a result of a termination of parental rights proceeding. That court will have continuing jurisdiction until the child is adopted, *Children's Services Div. v. Weaver*, 19 Or App 574, 578, 528 P2d 556 (1974), and its decision to commit the child to CSD does "not terminate the court's continuing jurisdiction to protect the rights of the child or the child's parents or guardians." ORS 419B.349. The state tacitly concedes that petitioners may challenge CSD's denial of their adoption request, but it argues that such a challenge should be brought in *juvenile court*, not circuit court, because the juvenile court

"has exclusive original jurisdiction in any case involving a person who is under 18 years of age and * * * [w]ho is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interest of the [child]." ORS 419B.100(1)(d).

Although the state's brief emphasizes the importance of the word "exclusive," as used in that statute, it overlooks the significance of the phrase "in any case involving a person who is under 18 years of age * * *." For the juvenile court to have "exclusive original jurisdiction," the case must "involv[e]" a child. ORS 419B.100(1)(d). A properly drafted[7] petition for judicial review does *not* involve the child, because by its very nature it does not pertain to the child's care,

---

is vested in each and demonstrates two of the many ways in which they act independently of one another.

[7] Although in this case the petition erroneously contains references to the "best interests of the child," those references are neither fatal nor dispositive of the legal question of whether petitioners are entitled to judicial review of CSD's decision, pursuant to the APA.

custody and adoptive placement. Those matters cannot be decided in an APA proceeding. Instead, a petition for judicial review raises the issue of whether CSD engaged in an improper *decision making process* in relation to petitioners alone. Its purpose is to establish that an administrative error has taken place and should be remedied. The question of whether the agency employed improper methods or criteria in reaching its decision does not involve any determination that is specific to the child.

Further, although petitioners ultimately hope to obtain CSD's consent to their adoption of the child, that is not a type of relief that any court can grant, *see* n 10, *infra*, and, appropriately, it is not the type of relief that petitioners sought in Clackamas County Circuit Court. Their petition for judicial review requests that CSD's decision be set aside, reversed or remanded on the grounds that, *inter alia*, the decision was inconsistent with an agency rule and was violative of a constitutional provision. *See* ORS 183.484(4)(b)(B), (C). Setting aside, reversing or remanding CSD's decision is not the equivalent of ordering CSD to consent to petitioners' adoption request. In sum, a petition for judicial review that challenges CSD's failure to follow proper administrative procedures is not a "case involving a [minor]," because it does not decide questions regarding the care, custody or welfare of the child. ORS 419B.100(1)(d). Accordingly, the juvenile court does not have exclusive original jurisdiction over this type of case.

The next question is whether a juvenile court is nonetheless authorized to decide that, under ORS 183.484(4), CSD has or has not engaged in an impermissibly flawed administrative decision-making process. As noted above, the legal issue presented by a petition for judicial review is limited to the propriety of CSD's administrative treatment of petitioners' request, not its decisions regarding who may adopt the child. A proper resolution of the question would not include *any* decisions regarding the child. Instead, the court would examine whether the agency properly interpreted a provision of law; whether it exercised its discretion within the range of discretion delegated to CSD by the legislature and acted in accordance with its policies and practices; whether there was substantial evidence to support the

agency's decision; and whether the agency's denial was based on unconstitutional criteria. ORS 183.484(4).

The state has not cited, and we have not found, any statutory or case law under which juvenile courts are authorized to resolve such matters. The role of juvenile courts has always been to decide questions regarding the care, custody and welfare of children. Toward that end, the court may hold a hearing to review the child's placement, ORS 419B.449, may modify or set aside its order committing a child to CSD, so long as no adoption proceeding is underway, ORS 419B.426; ORS 419B.420, and may intervene when a CSD placement decision is "so inappropriate as to violate the rights of the child," ORS 419B.349. It is not within the province of juvenile courts to rule on purely administrative questions regarding the decision-making process that CSD engaged in when it denied an applicant's adoption request. Accordingly, we hold that the circuit court erred when it ruled that the juvenile court was the only forum available to petitioners.

We turn to the question of whether the circuit court is authorized to decide the issues that are presented by their petition for judicial review. There is precedent for concluding that the resolution of such issues is properly within the purview of the circuit courts. In *Graham v. Children's Services Division*, 39 Or App 27, 34, 591 P2d 375 (1979), we held that, although grandparents who sought to adopt their grandchildren had "no liberty interest * * * requiring the protection of a contested case hearing," they were entitled to judicial review of CSD's denial as a noncontested case,[8] pursuant to ORS 183.484(3). As a footnote to that holding, we wrote:

> "Consent of Children's Services Division is jurisdictional in adoption proceedings involving children permanently committed to the agency. There is considerable dictum to the effect that CSD's refusal to consent cannot be challenged. The cases discussing the unreviewability of CSD's refusal to consent all involve adoption proceedings [that had already

---

[8] In 1987, CSD promulgated an administrative rule that provides:

"Homes considered as a potential [adoptive] placement resource for a particular child and * * * not selected do not qualify for a grievance hearing nor for a contested case hearing." OAR 412-30-036(2).

commenced]. None deals, as does this case, with *a direct challenge to CSD's refusal to consent to an adoption.* Furthermore, those cases rest, at least in part, upon the fact that CSD is in loco parentis as to the children permanently committed to it. CSD is not a biological parent. The fact that CSD must make the same sort of decision a parent may make does not give it the broad, unreviewable discretion of a human parent." 39 Or App at 27 n 7. (Emphasis supplied; citations omitted.)

Here, petitioners alleged that CSD's final order denying their request to adopt the child was based on petitioners' Seventh Day Adventist lifestyle and therefore violated the Equal Protection and Due Process clauses of the United States Constitution. Also, petitioners alleged that CSD's decision was "based on insufficient facts," which could be interpreted as an allegation that the decision was not supported by substantial evidence.[9]

It is undisputed that CSD is subject to the APA. *See Morgan v. MacLaren School,* 23 Or App 546, 548, 543 P2d 304 (1975). Nothing in the text of the APA suggests that it is not available to challenge final decisions made by CSD in response to a prospective adoptive parent's request for consent to adopt a child. Nonetheless, the Clackamas County Circuit Court held that the APA was unavailable to petitioners because of problems that the court believed would arise if petitions for judicial review could be used to challenge CSD's denial of consent to an adoption.

We have examined each of the circuit court's concerns and conclude that, while understandable, they are misplaced. First, the court suggested that judicial review under the APA might violate a child's rights to confidentiality. However, those rights are protected when the child's records are examined *in camera.* Second, the court was concerned that the child would not automatically have party status under the APA. That is not an accurate reading of ORS 183.480(1), which allows judicial review to be sought by "[a]ny person adversely affected or aggrieved by" a final agency order. Also, the trial court may have lost sight of the

---

[9] Petitioners' remaining allegations do not fit within any of the categories specified in ORS 183.484(4).

fact that an APA-based challenge is directed at CSD's administrative treatment of *petitioners' request*, not its treatment of the child. Given the nature of the allegations and the limited relief that is available to petitioners, child could understandably decide not to become a party to the action. Finally, the court expressed concern over the fact that resolution of an APA-based action is not governed by the "best interests of the child" standard. As discussed above, the child's custody and welfare are not at issue in a petition for judicial review and the circuit court would have no reason whatsoever to apply the "best interests of the child" standard in a proceeding that relates only to CSD's treatment of petitioners. Even if the circuit court reverses the agency's decision, the only consequence is that CSD must correct its decision-making process and, under that corrected process, reach a decision. CSD may or may not ultimately decide that petitioners are the most suitable adoptive parents for the child, and may grant or again refuse to consent to their adoption request.[10]

We must address one final concern relating to the review of CSD adoption decisions in a APA-based proceeding in circuit court. Both the state and the dissenting judges in this case argue that such review could lead to inconsistent conclusions in separate proceedings that employ different standards of review. Specifically, the state is concerned that under the APA, the circuit court could require CSD to place the child with petitioners while at the same time the juvenile court could decide that continued placement with petitioners is not in the best interests of the child. The dissent is concerned that the circuit court might *prohibit* CSD from placing the child with petitioners, even though continued placement might be in the child's best interests. 131 Or App at 411 n 4. Those concerns demonstrate a misunderstanding of the authority possessed by the circuit court. *The circuit court cannot dictate CSD's placement decisions*. Even if the court

---

[10] It has long been recognized that CSD is in a better position than are adversaries and judges to narrow down and ultimately select from the available pool of applicants the most suitable adoption placement. *State ex rel Juv. Dept. v. Kenneth M.*, 27 Or App 185, 191, 555 P2d 933 (1976). Just as a biological parent cannot be judicially forced to choose one prospective adoptive parent over another, CSD cannot be required to choose petitioners over some other prospective adoptive family. *See* ORS 419B.337(2); *State ex rel Juv. Dept. v. Smith*, 107 Or App 129, 132, 811 P2d 145, *rev den* 312 Or 235 (1991).

determined that CSD had, on an improper basis, issued a final order denying consent to the proposed adoption (for example, if CSD had decided that it would no longer consent to any adoptions by Hispanic families, and petitioners happened to be Hispanic), the circuit court could at most reverse and remand that order to CSD. ORS 183.484(4)(b). CSD would then be required to reconsider its decision by following the required procedures, applying the proper criteria and refraining from applying improper criteria. The agency's resulting decision could be exactly the same as the original one, *i.e.*, CSD could again refuse to consent to the petitioners' adoption request, but the *basis* for the second decision, and the process by which it was reached, would have to comply with the law.[11]

We understand the emphasis which the dissent places on the role of juvenile courts in dealing with children, but it ignores the fact that, except in extraordinary circumstances, a juvenile court cannot involve itself in specific placement decisions; those are entirely within the province of CSD. It is possible to imagine a scenario in which CSD, after reconsidering its denial, might decide to consent to the petitioners' adoption request. If, at the same time, the juvenile court decided that *removal* of the child from the petitioners' home was necessary to ensure the child's safety, CSD would be required to act according to the juvenile court order, because that court's decisions regarding the welfare of the child prevail. If at that point CSD refused to remove the child from petitioners' home, the juvenile court could either terminate CSD's legal custody over the child or prevent CSD's continued placement, if the court found that the placement was "so inappropriate as to violate the rights of the child." ORS 419B.349. In sum, because of the nature of what they are authorized to review, the juvenile and circuit courts cannot reach "inconsistent" conclusions. The circuit court addresses only administrative procedures; it has no voice in the substantive decisions that are made by CSD.

Because we hold that the lawfulness of CSD's decision-making process may be challenged by a petition for

---

[11] The dissent's comments about the unavailability of CASAs during the APA review process, 131 Or App at 410, fail to note that that review process has nothing whatsoever to do with abused or neglected children. There is no conceivable role that a CASA could play in a circuit court decision regarding whether an agency has followed proper administrative procedures.

judicial review in circuit court under ORS 183.484, the circuit court erred in dismissing the petition in this case.

■    Petitioners' second assignment of error is directed at the Lane County Juvenile Court's dismissal of their petition for jurisdiction. ORS 419B.230. The petition alleges that CSD's placement decisions regarding the child constituted a form of abuse. The court held that the petition failed to allege facts sufficient to show that child appears to be within the juvenile court's jurisdiction.[12] Under ORS 419B.100(e)(C) and (D), jurisdiction may be based on, among other things, a showing that a child's custodian has subjected the child to "cruelty" or has "failed to provide the [child] with the care, guidance and protection necessary for the [child's] physical, mental or emotional well-being."

Petitioners' allegation that CSD's removal of the child from their home was "without cause or facts consistent with the best interests of the child" does not constitute an allegation of abuse or neglect. However, their allegation that the child has been placed in as many as ten different homes in twelve months could support a finding that CSD has failed to provide the care, guidance and protection necessary for the child's mental or emotional well-being. Such frequent placements in and removals from homes, without an adequate explanation by CSD, is a matter which the juvenile court, in the exercise of its "continuing jurisdiction to protect the rights of the child," ORS 419B.349, should have explored.

Although the juvenile court in this case relied on ORS 419B.236, which provides that the court "may dismiss the petition at any stage of the proceedings," there are limits to that rule. *See, e.g., State ex rel Juv. Dept. v. Gillman,* 80 Or App 570, 574, 723 P2d 341 (1986). Given both the significance and the implications of the allegation made by petitioners in this case,[13] we conclude that the juvenile court's summary

---

[12] The juvenile court also held that petitioners had failed to allege facts which, if true, would meet the requirements of ORS 109.119, the "emotional ties" statute that allows individuals to file a motion to intervene in juvenile court proceedings in an effort to gain custody, guardianship, visitation or other rights related to the maintenance of a child-parent relationship with the child. The state concedes that petitioners had sufficient emotional ties to gain "standing" under that statute. We accept that concession.

[13] We have previously held that children have a "right * * * to enjoy member-

dismissal of their petition, without even a preliminary inquiry into the matter, constitutes an abuse of discretion and must be reversed.

In sum, prospective adoptive parents cannot obtain an order requiring CSD to consent to their adoption request. However, if they have been subjected to a defective decision-making process and there are grounds for judicial review under the APA, the circuit court is the appropriate forum. APA-based review is limited to those bases provided in ORS 183.484, and petitioners' victory, if any, may not benefit them personally. Although judicial review will ensure that CSD is properly exercising its decision-making authority, it is not a guarantee that CSD will ultimately consent to petitioners' adoption request. As for allegations regarding custodial conduct that is detrimental to the welfare of a child, the juvenile court remains the appropriate forum for hearing such matters.

Judgment in CA A77343 reversed and remanded; order in CA A75412 reversed and remanded.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority's conclusion that the juvenile court's summary dismissal of petitioner's petition was an abuse of discretion that must be reversed. However, I do not agree with the majority's conclusion that there is, in effect, a "twin track" under the APA for the review of CSD's decision. I believe that the implications that flow from the majority's analysis will, in fact, cause serious problems in the effective operation of the juvenile court system. More importantly, I believe that the majority opinion will allow a court to make decisions significantly affecting childrens' lives without the protections afforded children under the juvenile code.

Petitioners contend that CSD's decision denying their adoption request is reviewable under the APA. Specifically, they argue that ORS 183.480(1), which provides that "any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order," entitles them to judicial review of the

---

ship in a permanent home and family while * * * still young." *Children's Services Div. v. Weaver, supra,* 19 Or App at 578.

decision and, under ORS 183.484(1),[1] jurisdiction for that review is in the circuit court. CSD argues that jurisdiction in this case is controlled by ORS 419B.100(1), which provides that:

"[t]he juvenile court has *exclusive original jurisdiction* in any case involving a person who is under 18 years of age and:

"* * * * *

"(d)   Who is dependant for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interests of the person." (Emphasis supplied.)

Judicial review of CSD's decision would necessarily involve the child, who is under 18 years of age and is dependant for care and support on a public child-caring agency.[2] Therefore, according to CSD, the juvenile court has exclusive jurisdiction of the questions involved in this case and APA review of CSD's decision is not available.

We must determine which grant of jurisdiction takes precedence. The question is one of statutory interpretation, and, in interpreting a statute, this court's task is to determine the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Our inquiry must begin with the text and context of the statute in question. 317 Or at 610-11. A comparison of the text of the two grants of jurisdiction is instructive; ORS 183.484(1) makes no mention of exclusivity, while ORS 419B.100(1) grants "exclusive original jurisdiction." At this first level of textual analysis, we also consider "rules of construction * * * that bear directly on how to read the text." 317 Or at 611. One of those rules of construction is contained in ORS 174.020, which provides that "a particular intent shall control a general one that is inconsistent with it." ORS 183.480 sets forth

---

[1] ORS 183.484(1) provides, in part:

"Jurisdiction for judicial review of orders other than contested cases is conferred upon the Circuit Court for Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office."

[2] We note that the petition for APA review requests that the court reverse or remand CSD's decision, because it "was contrary to the best interests of the child." In addition, the petition requests that the "decision of CSD relevant to removing [the child] from their home be set aside." Clearly, the nature of the inquiry and the nature of the relief requested demonstrate that the circuit court would be deciding a case "involving" the child.

a general rule that all agency orders in other than contested cases will be subject to judicial review in the circuit courts. That general intent contrasts with the particular intent of ORS 419B.100(1), that all cases involving juveniles shall be within the *"exclusive* original jurisdiction" of the juvenile court. Accordingly, I would hold that the trial court correctly dismissed petitioners' petition for judicial review in the Clackamas County Circuit Court.

The majority's contrary result circumvents the duties and responsibilities of juvenile courts and denies the protections available to children in that forum. A juvenile court acts in *parens patriae*, and focuses on family unity, the best interests of the child and other statutorily established considerations. *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 188-89, 796 P2d 1193 (1990); ORS 419A.002(2). One of the ways the juvenile court protects children is through the appointment of a Court Appointed Special Advocate (CASA) "in every case involving an abused or neglected child which results in a judicial proceeding." ORS 419A.170(1). The CASA, subject to the direction of the court, is appointed to investigate, advocate, negotiate and monitor all aspects of the case to ensure that the child is receiving the best results possible from the system. Under the APA review process, CASAs are not provided and none of the related protections are available to the child.

In addition, APA review of CSD's decision in this case may unnecessarily extend the litigation involving the child. The United States Supreme Court has recognized that the need for finality is "unusually strong" in child custody cases. *Lehman v. Lycoming County Children's Services*, 458 US 502, 513-14, 102 S Ct 3231, 73 L Ed 2d 928 (1982). In *Lehman*, the Court was faced with the question of whether federal habeas corpus review was available in child custody cases. It acknowledged that few things are as detrimental to children as uncertainty about their living situation. Additionally, the Court noted that there is a danger that, as litigation expenses mount and cases become more contentious, social workers and agencies may become less willing to act in the best interests of the child. The same considerations are relevant here, albeit for somewhat different reasons. APA review would inevitably extend the uncertainty attached to

CSD decisions, and CSD may be less willing to act in the best interests of the child if doing so was contrary to the wishes of the child's care-givers.

Moreover, APA review of CSD decisions such as this one could lead to inconsistent conclusions in separate proceedings with differing standards of review. Under the APA, judicial review of agency action such as this occurs, in the first instance, in the circuit court. ORS 183.480(1). The circuit court reviews the action under ORS 183.484(4) for errors of law, abuse of discretion and substantial evidence. Under 183.486, the circuit court may provide "whatever relief is appropriate," including mandatory, prohibitory or declaratory relief. In contrast, under the juvenile code, judicial review is in this court with *de novo* review. ORS 419A.200(5). The potential for inconsistent outcomes,[3] with no provisions for reconciliation, leads inexorably to the conclusion that a twin track for review of CSD decisions is inappropriate.

Finally, I agree with the majority that the scope of this case is very limited. In most situations, CSD acts as any other agency and its decisions are subject to APA review. However, this case implicates a dispute in which APA review would necessarily require a circuit court to decide issues that have been given exclusively to the juvenile court. These cases are ones "involving" a child. ORS 419B.100(1). In these circumstances CSD has been charged with acting as a parent. For example, under ORS 419B.346, when a child in need of medical care or special treatment is placed in the custody of CSD, it must prepare and implement a plan for the treatment of the child. So too, this decision by CSD to allow or deny adoption is ultimately a parental-type decision.

For all of the foregoing reasons, I would hold that APA review of CSD's decision is not available *in this case*. This result does not mean that petitioners cannot challenge CSD's decision. The majority correctly concluded that petitioners' juvenile court petition should be allowed to proceed and that that petition is an appropriate vehicle to address

---

[3] For example, if both petitions were allowed, one possible outcome would be that the circuit court, under the APA, would prevent CSD from placing the child with petitioners. At the same time, in our *de novo* review of the juvenile court proceeding, we might decide that continued placement with petitioners was in the best interests of the child.

petitioners' concerns. In addition, under ORS 419B.440 - .449, the juvenile court will have an ongoing obligation to supervise the child and any guardianship. ORS 419B.443(1) requires a report by a guardian at least every six months and, under ORS 419B.449(1), the court can hold a hearing upon receiving any such report "to determine if the court should continue jurisdiction over the child or order modifications in the care, placement and supervision of the child." If CSD erred, the proper place to address that error is in the juvenile court, where the court and supporting services are designed to better address child-protection issues and the best interests of children.

Accordingly, I dissent.

Deits and Edmonds, JJ., join in this opinion.