886 P.2d 1024 (1994)
131 Or. App. 512
In the Matter of C.S., a Minor Child.
STATE ex rel. JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, Respondent,
v.
Joan and James RIVERS and C.S., Appellants.
661-94C; CA A74229.
Court of Appeals of Oregon.
Argued and Submitted February 11, 1994.
Decided December 7, 1994.
*1025 Richard D. Cohen, Milwaukie, argued the cause and filed the brief for appellants Joan and James Rivers.
Martin W. Reeves, Portland, argued the cause for appellant C.S. With him on the brief was Reeves, Kahn & Eder.
Michael C. Livingston, Asst. Atty. Gen., argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Atty. Gen., and Virginia L. Linder, Sol. Gen.
Before ROSSMAN, P.J., and De MUNIZ and LEESON, JJ.
ROSSMAN, Presiding Judge.
Appellants (the Rivers) seek to adopt a child who had been in their foster care for almost three years. Their adoption request was denied by CSD and the child was placed in another home for adoption. Both the Rivers and child appeal from a juvenile court order which, inter alia, dismissed their jurisdictional petition that alleged that CSD was endangering the conditions and circumstances of the child, dismissed their petition for judicial review of CSD's denial of their adoption request, and ruled that CSD's adoptive plan was consistent with the best interests of the child, was not an abuse of discretion and did not inappropriately emphasize the child's race. We affirm.
Child, who was born addicted to heroin, became a ward of the court and was permanently committed to the custody of CSD within days of her birth. Child's racial and ethnic background is mixed: one-quarter African American, one-quarter Caucasian, and one-half Syrian. When she was five days old, child was placed in the home of the Rivers, who served as her foster parents for the next two years and ten months. Child suffered from many of the difficulties that are associated with infant drug addiction, and required extra attention and medical care. The state acknowledges that after almost three years, child was strongly bonded to the Rivers.
The Rivers are a 57-year-old foster mother and a 70-year-old foster father. Both are Caucasian, and both are in excellent health. They live with their two adult children and a recently adopted five-year-old Native American child. Their adult daughter is directly involved in caring for her recently adopted sibling and in helping with any foster children who stay in the family home.
After the Rivers asked CSD to consent to their request to adopt child, a home study was conducted and CSD decided to consider the Rivers, along with other suitable families, as candidates for child's adoptive placement. CSD considered in a positive light the facts that the Rivers have been foster parents for 30 years and have provided quality care to children placed in their home. Also, foster mother has received considerable training *1026 and has specialized in caring for medically needy children. The agency considered in a negative light the facts that the Rivers will be elderly by the time child reaches adolescence, two of their adult children still live with them, they had been reluctant to discuss with their three children the fact that each was adopted, and they had not taken steps to expose child to "her culture, her [minority] community."
A committee was formed by CSD to select an adoptive family for child. Three families, including the Rivers, were considered. The committee chose the Jones family which, at that time, included a husband, wife, four teenagers from prior relationships and one younger child in common. The Jones family is younger than the Rivers and its members are part African-American. Mrs. Jones works full time.
Shortly after child was placed with the Jones family, Mr. Jones left the family home and divorce proceedings were initiated. Child has remained in the care of Mrs. Jones.
The Rivers filed a jurisdictional/dependency petition in juvenile court, alleging that CSD's decisions to remove child from their home and to place her with the Joneses "endangered the conditions and circumstances" of child and failed to provide the protection necessary to ensure child's mental and emotional well-being. ORS 419B.230; State ex rel. Juv. Dept. v. Smith, 316 Or. 646, 652-53, 853 P.2d 282 (1993). The Rivers also filed a petition for judicial review of CSD's adoptive placement decision. ORS 183.480.[1] The court ordered the petitions consolidated.[2] It held a hearing, received evidence and dismissed the jurisdictional petition on the ground that child's well-being was not endangered and the Rivers had not shown that CSD's decision to place child with the Jones family was "so inappropriate as to violate the rights of the child." ORS 419B.349. On the petition for judicial review, the court took under advisement the question of whether the Rivers had standing, and allowed a hearing on the merits. The court made findings and ultimately dismissed the petition on the basis of a post-trial ruling that the Rivers lacked standing to challenge CSD's placement decision. On appeal, petitioners challenge both rulings.
In their first assignment of error, the Rivers contend that they have established by a preponderance of the evidence facts which show that child is within the jurisdiction of the juvenile court.[3] ORS 419B.310(4). They point to the overwhelming evidence of their psychological parent/child relationship with child and the significant amount of expert testimony predicting that child would undergo psychological or emotional difficulties as a consequence of being removed from their home. However, there was also evidence that child has not been damaged by the move from the Rivers to the Jones family. She has not had difficulty eating, sleeping or playing, she talks "all of the time," has become "particularly attached" to Mrs. Jones and two of the Jones' children, seems secure and happy, talks about and looks at pictures of her birth mother and foster parents without apparent sadness nor anxiety, enjoys her day care center and is "clearly thriving." Having reviewed the record, we agree with the juvenile court, which found:
"The evidence is strong that [child] has adjusted to her new home and family and is doing well there. The prediction of an attachment disorder is a prediction which is not supported by the behavior of this child." *1027 We also agree that CSD's decision to place child with the Jones family was not so inappropriate as to violate the rights of the child.[4] Accordingly, the jurisdictional petition alleging that CSD's removal of child from the Rivers' home and placement of child in the Jones' home would cause child severe emotional damage was properly dismissed.
The Rivers' second assignment of error is directed at the juvenile court's ruling that they lacked standing, under ORS 109.119, to challenge CSD's denial of their adoption request by filing a petition for judicial review pursuant to the Oregon Administrative Procedures Act (APA).
Although a petition for judicial review cannot be used to challenge the merits of CSD's decision to deny consent to an adoption request, we have recently held that a petition for judicial review may challenge the administrative aspects of CSD's decision, e.g., whether CSD engaged in an improper decision-making process by using improper methods or criteria. State ex rel. Juv. Dept. v. Adams, 131 Or.App. 396, 886 P.2d 19 (1994); ORS 183.484.[5] The only fact necessary to establish "standing" to file a petition for judicial review is that petitioners were either parties to or were "adversely affected or aggrieved by" a final agency order. ORS 183.480(1). Accordingly, the juvenile court erred in concluding that the Rivers also were required to establish standing under ORS 109.119.
However, we conclude that that error was harmless in this case. Here, the trial court held a hearing, received evidence, reviewed the exhibits and the file and expressly found that (1) CSD had not abused its discretion by placing child with parents other than the Rivers; (2) the agency had followed its procedures and policies to arrive at an adoptive placement decision; (3) race, although an important factor, "was not the single underpinning of the committee's decision," and (4) there were no procedural or substantive defects in the agency's decision making process.[6] Those findings are supported by substantial evidence.
Appellants' remaining arguments do not merit discussion.
Affirmed.
NOTES
[1] ORS 183.480 provides, in part:

"(1) Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."
[2] Although generally an APA-based petition for judicial review would give rise to a separate proceeding, the parties on appeal do not challenge the court's consolidation of the proceedings in this case.
[3] When, as here, a child is already within the jurisdiction of the juvenile court because of an earlier proceeding, the goal of a subsequent jurisdictional petition is to ask the court to again intervene to protect the child by, e.g., changing the custodial arrangements that were earlier made or by providing "protective supervision." State ex rel. Juv. Dept. v. Smith, 107 Or.App. 129, 132, 811 P.2d 145, rev. den. 312 Or. 235, 819 P.2d 731 (1991).
[4] The Rivers and child argue that CSD's "undue consideration" of child's race, and the agency's efforts to find a "racially appropriate" family to adopt child, violated state and federal constitutional guarantees of equal protection. They allege that race was "the determining factor" in CSD's placement decision. However, that allegation is not supported by the record. Instead, the evidence shows that the agency weighed all of the relevant factors, including race, and gave considerable weight to the factors that child was emotionally and psychologically bonded with the Rivers. We fail to see how equal protection guarantees are violated by a policy that allows the child's racial background to be one of the factors that is considered by CSD in its adoptive placement decisions.
[5] ORS 183.484(4) provides, in part:

"(a) * * * If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:
"(A) Set aside or modify the order; or
"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.
"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:
"(A) Outside the range of discretion delegated to the agency by law;
"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or
"(C) Otherwise in violation of a constitutional or statutory provision.
"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."
Although a reversal of CSD's decision under ORS 183.484(4) would require the agency to re-think its decision and to base its next decision on proper grounds, a reversal would not have the effect of compelling CSD to grant the Rivers' adoption request. When a child has been committed to the legal custody of CSD, the court is without authority to order CSD to consent to a request to adopt that child. State ex rel. Juv. Dept. v. Adams, supra.
[6] The court correctly noted that it was "without authority to substitute its judgment for that of the agency in arriving at an adoptive placement for [child]."